Ronald **STRACENER**, Individually and as Natural Parent and Guardian of Tanya Stracener, et al., Petitioners,

v.

**UNITED SERVICES AUTOMOBILE ASSOCIATION**, Respondent.

**UNITED SERVICES AUTOMOBILE ASSOCIATION**, Petitioner,

v.

Scott **HESTILOW**, et al., Respondent.

Nos. C–7593, C–7874.

Supreme Court of Texas.

Sept. 13, 1989.

Rehearing Denied Oct. 18, 1989.

Jimmy Williamson, Susan McAuliffe, Houston, for Ronald Stracener, et al.

Cliff Harrison, Houston, John Milano, Jr., San Antonio, for United Services Auto. Ass'n.

Craig C. Radtke, Boerne, for Scott Hestilow.

DOGGETT, Justice.

These two cases were submitted together because each presents the issue of how the underinsured status of a motor vehicle is to be determined pursuant to article 5.06–1(2)(b) of the Texas Insurance Code. Additionally, we must decide the proper construction of article 5.06–1(5) of the Texas Insurance Code which provides for a set off in the amount an injured person recovers from the tortfeasor's insurer.

In *Stracener v. United States [sic] Automobile Association,* the First Court of Appeals held that the Straceners were not entitled to combine or "stack" the limits of underinsured motorist coverage under four separate insurance policies for the purpose of determining whether the tortfeasor was underinsured. 749 S.W.2d 158 (Tex.App.1988). In *United Services Automobile Association v. Hestilow,* the Fourth Court of Appeals held that such coverage may be stacked for the determination of the underinsured status of the tortfeasor, but held that the total coverage available to the beneficiary should be reduced by the limit of the tortfeasor's liability coverage. 754 S.W.2d 754 (Tex.App. 1988). We hold that under article 5.06–1(2)(b), "payment of claims" includes the payment of the claim of the injured party

seeking to recover the proceeds of underinsured motorist coverage. Therefore, a negligent party is underinsured whenever the available proceeds of his liability insurance are insufficient to compensate for the injured party's actual damages. We also hold that the set off provided for in article 5.06–1(5) is to be subtracted from the amount of actual damages incurred as a result of the negligence of the underinsured motorist rather than from the limits specified in the underinsured motorist insurance policy. Accordingly, we reverse the judgment of the First Court of Appeals in *Stracener,* affirm the judgment of the Fourth Court of Appeals in *Hestilow,* and remand *Stracener* to the trial court for further proceedings.

Both *Stracener* and *Hestilow* involve insurance policies issued by United Services Automobile Association (USAA) which provide benefits for injuries caused by drivers of underinsured motor vehicles defined as follows:

An underinsured motor vehicle is one to which a liability bond or policy applies but its limit of liability:

a. is less than the limit of liability for this coverage; or

b. has been reduced by payment of claims to an amount less than the limit of liability for this coverage.

\* \* \* \* \* \*

... The limit of liability shall be reduced by the amount recovered or recoverable from, or on behalf of the owner or operator of an underinsured motor vehicle.

LaDonna Stracener was killed when the car in which she was a passenger was struck from the rear by a car driven by Robert Lampe. It is uncontested that Stracener's death was proximately caused by Lampe's negligence. Lampe's car was covered by liability insurance, but settlement of claims of other parties involved in the same accident reduced the amount available for the wrongful death claim to $27,500. Stracener was covered by four separate policies, which provided uninsured/underinsured motorist coverage to the following limits:

| | |
|---|---|
| American National Property and Casualty Company | $100,000;[1] |
| State Farm Mutual Automobile Insurance Company | 10,000; |
| Allstate Insurance Company | 25,000; |
| United Services Automobile Association | 15,000. |

Settlements were reached with all these insurers except USAA. USAA moved for summary judgment on the ground that the tortfeasor, Lampe, was not an underinsured motorist as defined in the policy, because the amount of his insurance available to pay Stracener's claim, $27,500, exceeded the $15,000 limit of the underinsured motorist coverage under the USAA policy. The trial court granted this motion and the court of appeals affirmed.

Scott Hestilow and his parents, Roger and Elinor, sought the recovery of insurance benefits under two separate USAA policies which provided underinsured motorist coverage. While driving his mother's car, Hestilow was injured in a collision with a car driven by Alvino Casarez. The parties stipulated that the amount of Hestilow's damages equaled or exceeded $30,000. A settlement had previously been reached with Casarez' liability insurance carrier for the full amount of his $15,000 individual liability limits. Hestilow was covered both by his mother's insurance policy on the car he was driving and by a separate automobile policy owned by his father on which he was a named insured. Each policy provided underinsured motorist coverage of $15,000 per person. USAA initiated a declaratory judgment action seeking a determination of whether Casarez was an underinsured motorist under the terms of the two Hestilow policies. The *Hestilow* trial court concluded that the two policies should be stacked to determine whether Casarez was an underinsured motorist. Because the combined limits of the underinsured motorist coverage in the two policies, $30,000, exceeded the $15,000 limit of Casarez' policy, the trial court concluded that Casarez was an underinsured motorist. However, the trial court also conclud-

---

**1.** These limits, and the others referred to, are per person, rather than per occurrence.

ed that the $15,000 limit of Casarez' policy should be set off against the total $30,000 underinsured motorist coverage, and thus rendered judgment that USAA was liable under both policies for a total of $15,000. The court of appeals affirmed.

Article 5.06–1 of the Texas Insurance Code mandates the inclusion of uninsured and underinsured motorist coverage in automobile liability insurance coverage and provides in pertinent part:

(2) For the purpose of these coverages:
    ....

    (b) The term "underinsured motor vehicle" means an insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, or have been *reduced by payment of claims* arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.

    \* \* \* \* \* \*

(5) The underinsured motorist coverage shall provide for payment to the insured of *all sums which he shall be legally entitled to recover as damages* from owners or operators of underinsured motor vehicles because of bodily injury or property damage in an amount up to the limit specified in the policy, *reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.*

TEX.INS.CODE ANN. art. 5.06–1(2)(b), (5) (Vernon 1981) (emphasis added).

USAA contends that underinsured motorist protection under any given policy is not applicable whenever the amount of liability insurance proceeds available from a tortfeasor exceeds the limits of that policy's underinsured motorist coverage for the injured victim. Under USAA's interpretation, when a purchaser of underinsured motorist coverage with a $15,000 limit suffers $100,000 in damages from a negligent motorist with $15,000 liability limits, the injured party is not entitled to recover any benefits from the purchase of underinsured motorist coverage. According to

USAA, the tortfeasor, in this situation, by definition, would not be an underinsured motorist.

Agreeing with this interpretation, several courts have held that a tortfeasor with liability insurance in an amount equal to the injured victim's underinsured motorist coverage is not underinsured. *Tatum v. Mid-Century Ins. Co.*, 730 S.W.2d 41 (Tex. App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.); *Geisler v. Mid-Century Ins. Co.*, 712 S.W.2d 184 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.); *Infante v. Texas Farmers Ins. Co.*, 640 S.W.2d 321 (Tex.App.—Beaumont 1982, writ ref'd n.r. e.); *Muller v. Allstate Ins. Co.*, 627 S.W.2d 775 (Tex.App.—Houston [1st Dist.] 1981, no writ); . *But see Montanye v. Transamerica Ins. Co.*, 638 S.W.2d 518, 519–20 (Tex.App.—Houston [1st Dist.] 1982, no writ) (parties conceded that underinsured motorist coverage applied because liability limits were reduced to zero through the payment of plaintiff's claim). Moreover, section 5 of article 5.06–1 has been construed to require that any liability insurance benefits received be subtracted not from actual damages sustained but rather from the policy limits of the underinsured motorist coverage. *Geisler*, 712 S.W.2d 184; *Montanye*, 638 S.W.2d 518; *Infante*, 640 S.W.2d 321; *American Gen. Fire & Casualty Co. v. Oestreich*, 617 S.W.2d 833 (Tex.Civ.App.—Eastland 1981, no writ). It has been stated that:

The purpose of underinsured motorist coverage is to provide an individual injured by a motorist carrying insurance in an amount less than that required by law, or otherwise reduced by payments to *other* claimants in the same accident to an amount less than required by law, with no less coverage than the injured party would receive had the tortfeasor been fully insured or fully covered *in relation to plaintiff's underinsured motorist coverage* under the law.

*Muller v. Allstate Ins. Co.*, 627 S.W.2d at 777 (emphasis added).

We do not agree with this construction of the statute because it adds words not found in the statute and conflicts with prior

decisions of this court. Article 5.06–1 is to be construed, liberally to give full effect to the public policy which led to its enactment. *Employers Casualty Co. v. Sloan,* 565 S.W.2d 580, 583 (Tex.Civ.App.—Austin 1978, writ ref'd n.r.e.); *Fidelity & Casualty Co. of New York v. Gatlin,* 470 S.W.2d 924, 927 (Tex.Civ.App.—Dallas 1971, no writ). The purpose of the statute, as stated therein, is "the protection of .persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles...." TEX.INS.CODE ANN. art. 5.06–1(1) (Vernon 1981).

Originally enacted to provide for uninsured motorist protection, article 5.06–1, Act of Oct. 1, 1967, ch. 202, § 3, 1967 Tex.Gen.Laws 448, 449, was thereafter amended to add underinsured motorist coverage. Act of Aug. 29, 1977, ch. 182, § 1, 1977 Tex.Gen.Laws 370, 370–71. The Legislature had as its initial objective the protection of conscientious motorists from "financial loss caused by negligent financially irresponsible motorists...." Act of Oct. 1, 1967, ch. 202, § 3, 1967 Tex.Gen.Laws 448, 449. Further amendments in 1979 and 1981 resulted in the current form of the statute. Act of Jan. 1, 1980, ch. 626, § 1, 1979 Tex.Gen.Laws 1418; Act of Aug. 31, 1981, ch. 380, § 1, 1981 Tex.Gen.Laws 1002. Inasmuch as the only change made in the above quoted portion of article 5.06–1(1) was the inclusion of the phrase "or underinsured", the strong underlying public policy applies equally to both uninsured and underinsured motorist coverage. *Compare* Act of Oct. 1, 1967, ch. 202, § 3, 1967 Tex.Gen.Laws 448, 449 *with* Act of Aug. 31, 1981, ch. 380, § 1, 1981 Tex.Gen.Laws 1002.

This court construed the policy statement of article 5.06–1(1), as originally enacted, in *American Liberty Insurance Co. v. Ranzau,* 481 S.W.2d 793 (Tex.1972). Paula Ranzau was injured by an uninsured motorist. Two insurance policies providing uninsured motorist coverage were applicable to Ranzau, one she had purchased and the other obtained by the owner of the car in which she was a passenger. Ranzau's policy contained an "other insurance" clause providing that liability under the uninsured motorist coverage was limited if the insured had other available insurance. We held that the "other insurance" clause contravened the statute and was therefore invalid. In reaching this conclusion, we stated:

> The Texas statute states its purposes to be "the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles." These are its key words. The statute does not expressly or by any reasonable inference limit *the recovery* of actual damages to the statutory limits of required coverage for one policy in circumstances where the conditions to liability are present with respect to two policies with different insurers and insureds. This is the effect, however, of "other insurance" clauses, whether in the form of "pro-rata," "excess insurance," "excess-escape" or like clauses; one or the other insurer escapes liability, or both reduce their liability. Paula Ranzau was a beneficiary of the uninsured motorist provisions in the policy issued by American Liberty covering the Ranzau automobiles, and in the Raphael policy issued by United Services Automobile Association covering the Raphael automobile in which she was a passenger. This was a contractual benefit for which premiums, presumably computed in the light of the respective risk exposures, were paid by the insureds in each instance; *and to permit one policy, or the other, to be reduced or rendered ineffective by a liability limiting clause would be to frustrate the insurance benefits which the statute sought to guarantee and which were purchased by the respective insureds.*

*Ranzau,* 481 S.W.2d at 797 (emphasis in original and added).

In *American Motorists Insurance Co. v. Briggs,* 514 S.W.2d 233 (Tex.1974), two separate uninsured motorist policies, each with limits of liability of $10,000 per person covered the injured insureds. We held that:

[T]he statute requires that whenever coverage exists under the uninsured motorist endorsement, *the person covered has a cause of action on the policy for his actual damages to the extent of the policy limits without regard to the existence of other insurance.* If coverage exists under two or more policies, liability on the policies is joint and several to the extent of the plaintiff's actual damages, subject to the qualification that no insurer may be required to pay in excess of its policy limits.

*Briggs*, 514 S.W.2d at 236 (emphasis added).

The prior constructions of article 5.06–1(2)(b) and (5) by some Texas courts of appeals require a comparison between two separate insurance policies and operate to limit the possibility that an injured insured can recover actual damages. This frustrates the purpose of the statute as interpreted in both *Ranzau* and *Briggs*.

Section (2)(b) of article 5.06–1 defines an "underinsured motor vehicle" to include one on which the "limits of liability for the owner ... have been reduced by the payment of claims arising from the same accident to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy." Nothing contained in this statutory definition limits claims to those made by "others" as did the court of appeals in *Muller*, 627 S.W.2d at 777. *See Montanye*, 638 S.W.2d at 519–20. We hold that the "payment of claims" includes any payments made by the liability insurance carrier to the beneficiary of an underinsured motorist policy as well as to any other persons who may have suffered damages in the same accident.

Section (5) of article 5.06–1 provides for a set off in the amount that the insured recovers from the insurer of the tortfeasor's vehicle. The court of appeals in *Montanye v. Transamerica Insurance Co.*, 638 S.W.2d at 521 held that the phrase "reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle" modifies the phrase "an amount up to the limit specified in the policy." In doing so, the court applied the doctrine of "last antecedent" under which a qualifying phrase is said to modify the words or clause immediately preceeding it. *Id.*

Doctrines of construction, such as that of the last antecedent, are merely aids to be used in determining the meaning and intent of communications. Such doctrines must give way when there are indications that they are inapplicable. In analyzing the statute, the *Montanye* court did not note that the "reduced by" clause is separated by a comma from the remainder of the provisions in section (5). We find that this separation of the clause creates an ambiguity and, in keeping with the purpose of the statute, hold that the "reduced by" clause modifies the word "damages" used in the phrase "all sums which he shall be legally entitled to recover as damages".

In doing so, we note that unless the statutory language is construed, as we have done here, in a manner consistent with our decision in *Ranzau* and *Briggs*, underinsured motorist coverage would offer most motorists only nominal protection. Where the tortfeasor and the injured insured comply with the minimum statutory requirements, the underinsured motorist coverage for which the policyholder has paid a premium would be worthless unless there were multiple claimants with substantial damages.

Moreover, under the misinterpretation of the statute by some courts of appeals, insureds can never ascertain what, if anything, they have purchased. The availability of underinsured motorist insurance would be contingent upon numerous uncertainties including not only the limits of that coverage but also the limits of the tortfeasor's liability insurance, the extent of damages suffered by any other persons who may have been involved in the same accident and the amount of any settlements made with the liability insurance carrier. We doubt whether most Texas motorists understand that the amount of the coverage for which they are paying is only recoverable depending upon the limits of the liability coverage carried by the negligent driver and the peculiar facts of the particu-

lar accident. Even if they did, we believe this is not the coverage mandated by statute.

By purchasing this coverage along with basic liability coverage, the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that person's own family and guests from the negligence of others. This intent and the purpose of the statute are frustrated under the courts of appeals' construction of article 5.06–1. Accordingly, we disapprove of those decisions which have construed article 5.06–1(2)(b) and (5) in a manner inconsistent with this opinion. Those clauses in insurance policies which are not consistent with and do not further the purpose of article 5.06–1 are invalid.

The court of appeals' judgment in *Stracener* is reversed and that cause is remanded to the trial court for a determination of the actual damages sustained by the injured insureds and for further proceedings in accordance with this opinion. Under this court's opinion, the Hestilows would also be entitled to additional relief; however the Hestilows as appellees in the court of appeals below and respondents in this court have not invoked the jurisdiction of this court to grant additional relief. For this court to grant additional relief, the Hestilows would have had to file their own application for writ of error supported by a motion for rehearing in the court of appeals complaining of its judgment. *Archuleta v. International Ins. Co.*, 667 S.W.2d 120, 123 (Tex.1984); *Wich v. Fleming*, 652 S.W.2d 353, 356 (Tex.1983). We affirm the judgment of the court of appeals in *Hestilow*.