**Gary L. HUTTLESTON, Appellant,**

v.

**BEACON NATIONAL INSURANCE CO., Appellee.**

No. 2–91–037–CV.

Court of Appeals of Texas, Fort Worth.

Jan. 8, 1992.

Rehearing Overruled Feb. 5, 1992.

Walton, Brown, Walton, Seilheimer, & Reid, P.C., and Edwin J. Seilheimer, Granbury, for appellant.

Vial, Hamilton, Koch & Knox and J. Mark Hansen, Dallas, for appellee.

Before FARRIS, MEYERS and DAY, JJ.

## OPINION

DAY, Justice.

This appeal involved the claims of a motorist arising under the uninsured/underinsured motorist coverage of his own insurance policy.[1] On December 16, 1987, a truck being driven by Wade Riddle struck Huttleston's auto head-on. Huttleston's insurance policy, with Beacon National Insurance, provided for uninsured/underinsured coverage with policy limits of $100,000/$300,000. Riddle's liability coverage had a $100,000 limit on liability claims. Huttleston settled with Riddle for the full $100,000 of Riddle's liability insurance. He did not notify Beacon of this action or seek its consent before settlement became final. Huttleston released Riddle on July 13, 1988. This release and settlement violated the "consent to settle" exclusion in the Beacon policy.[2]

Subsequent to this settlement, in September of 1989, the Texas Supreme Court decided the case of *Stracener v. United Services Auto. Ass'n*, 777 S.W.2d 378 (Tex. 1989). In *Stracener*, the court changed the way policyholders determine their right to compensation under the underinsured motorist coverage of their policies. Before

---

1. The pertinent provision of Huttleston's policy is as follows: "[U]nderinsured motor vehicle is one to which a liability bond or policy applies but its limit of liability ... is less than the limit for this coverage."

2. The consent to settle exclusion provided that "[w]e do not provide Uninsured/Underinsured Motorists Coverage for any person: [i]f that person or the[ir] legal representative settles the claim without our consent." Such an exclusion is approved by the Texas Insurance Board and is found in every policy in the state.

*Stracener,* in a case like Huttleston's, Riddle was not considered an "underinsured" motorist. After *Stracener,* Riddle could be considered underinsured if the limit on his liability policy was insufficient to compensate Huttleston for his actual damages. Thus, pursuant to the decision in *Stracener,* had Huttleston not violated the "consent to settle" provision of his policy, he would have a "new" right to recover under his underinsured motorist coverage from Beacon.

Huttleston then brought suit against Beacon on three grounds: breach of contract (based on the underlying policy), reformation of the policy, and violations of TEX.INS.CODE ANN. arts. 21.21, and 21.21, § 16 (Vernon Supp.1991). Beacon responded by asserting the consent to settle exclusion as an affirmative defense to such claims. Beacon subsequently moved for summary judgment on this ground. The trial court granted such motion and entered final judgment for Beacon on all of Huttleston's claims. This appeal followed.

In a summary judgment case, the issue on appeal is whether the movant met his burden for obtaining summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); TEX. R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against the movant. *Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *Id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex. 1984); *Farley v. Prudential Ins. Co.,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any existing doubts must be resolved in the non-movant's favor. *Montgomery,* 669

S.W.2d at 311. The summary judgment will be affirmed only if the record on appeal establishes that the movant has conclusively proved all essential elements of the cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

■ In his first point of error, Huttleston urges that the trial court erred in granting Beacon's motion for summary judgment. He claims that under the rationale of *Stracener,* the "consent to settle" exclusion should be declared invalid because it does not further the purposes of TEX.INS.CODE ANN. art. 5.06–1 (Vernon 1981), in this case because Huttleston could not have known (at the time he settled with the at-fault party) that the express language in his policy and the decisions of lower courts interpreting this language would be changed.

It is necessary to examine *Stracener* at this point to determine what effect, if any, this decision has upon the "consent to settle" exclusion involved in this case. In essence, *Stracener* held that a party's recovery under the underinsured provision of his policy cannot be offset by the recovery from the underinsured. The court explained the policy reasons supporting this interpretation as follows:

> [U]nder the misinterpretation of the statute by some courts of appeals, insureds can never ascertain what, if anything, they have purchased. The availability of underinsured motorist insurance would be contingent upon numerous uncertainties including not only the limits of that coverage but also the limits of the tort-feasor's liability insurance, the extent of damages suffered by any other persons who may have been involved in the same accident and the amount of any settlements made with the liability insurance carrier. We doubt whether most Texas motorists understand that the amount of the coverage for which they are paying is only recoverable depending upon the limits of the liability coverage carried by the negligent driver and the peculiar facts of the particular accident.

. . . .

By purchasing this coverage along with basic liability coverage, the insured has expressed an intent not only to protect others from his or her own negligence but also to protect that person's own family and guests from the negligence of others. This intent and the purpose of the statute are frustrated under the courts of appeals' construction.... *Those clauses in insurance policies which are not consistent with and do not further the purpose of article 5.06–1 are invalid.*

*Stracener,* 777 S.W.2d at 383–84 (emphasis added).

Huttleston focuses on the highlighted language and asks us to render invalid, as a matter of law, any and all exclusionary provisions which would prevent recovery under TEX.INS.CODE ANN. art. 5.06–1 (Vernon 1981).

The Texas courts have consistently upheld the validity of the consent to settle exclusion relied upon by Beacon in this case. *Ford v. State Farm Mut. Auto. Ins. Co.,* 550 S.W.2d 663, 665 (Tex.1977). *See also Dairyland County Mut. Ins. Co. of Texas v. Roman,* 498 S.W.2d 154, 159 (Tex. 1973); *Castorena v. Employers Casualty Co.,* 526 S.W.2d 680 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.); *McClelland v. United Serv. Auto. Ass'n,* 525 S.W.2d 271 (Tex.Civ.App.—Beaumont 1975, writ ref'd); *Bauer v. Consolidated Underwriters,* 518 S.W.2d 879 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.); *Grissom v. Southern Farm Bureau Casualty Ins. Co.,* 476 S.W.2d 448 (Tex.Civ.App.—Waco 1972, writ ref'd n.r.e.).

The supreme court in *Dairyland* stated that the purpose of the exclusion is to protect the insurance company's subrogation rights. The court held that the injured party's settlement with the at-fault party and his release of the at-fault party destroyed the insurance company's subrogation rights against that party. It is true, said the court, that the compromise settlement between the injured and the at-fault party involved payment of the full amount of the liability limits relating to bodily injury, but the release of that responsible party, individually, extinguished and precluded any further claims by the insurer (which would otherwise have had a subrogation claim). The insurer lost an opportunity that it would have possessed under the insurance contract to seek reimbursement from the responsible party, individually, as the underinsured motorist. The court went on to hold that the exclusion is not rendered unenforceable and is not against public policy, even though the injured party received the full policy limits under the responsible party's liability insurance policy. *Dairyland,* 498 S.W.2d at 159.

In *Castorena v. Employers Casualty Company,* 526 S.W.2d 680 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.), it was undisputed that the release or settlement with the responsible party's insurer was made without first obtaining the written consent of the Employer's Casualty Company, the injured party's insurer. *Id.* at 681. The court held that under similar, but not identical situations, it has been held that the insured is barred from recovery (citations omitted). The validity and legitimacy of this particular exclusion from uninsured motorist coverage was upheld in this case because it serves "to protect the company's subrogation rights against the uninsured motorist or any other person legally responsible for the insured's injuries." Citing *Dairyland,* 498 S.W.2d at 159, *supra.* The court held that the exclusionary clause (consent to settle clause) is valid and enforceable and does not deprive an insured of the protection required by article 5.06–1. *Id.* The Beaumont court in *McClelland,* 525 S.W.2d 271, was persuaded by the subrogation policy reasons as well. *See also Bauer,* 518 S.W.2d 879; *Miller v. Hanover Ins. Co.,* 718 S.W.2d 429, 430 (Tex.App.—Eastland 1986, writ ref'd n.r.e.) (Insurer won summary judgment based on the "consent to settle" exclusion. The court relied on other cases [discussed *infra*] that have upheld the validity of similar exclusions when considering uninsured motorist coverage.).

In *Grissom,* 476 S.W.2d 448, the court held that an uninsured motorist provision

excluding coverage where insured, without written consent of insurer, makes a settlement with any person who may be legally liable was clear, and where the provision had been approved by the State Board of Insurance; that provision would be enforced as written against the insureds who entered into compromise settlement agreements with another insurance carrier without the written consent of their own insurer.

In that case, the appellants contended that the insurance contract is to be strictly construed in favor of the insured, where the policy uses terms of doubtful meaning or where the language of the contract is ambiguous. However, "[c]ourts cannot make new contracts between the parties ... [w]here the terms of an insurance policy are plain, definite and unambiguous, the courts cannot vary these terms." *Id.* at 450 (citations omitted). The court also cites for authority *LaBove v. American Employers Ins. Co.*, 189 So.2d 315 (La. App.1966), as a case in which a Louisiana court of appeals held the exclusion enforceable.

Since *Stracener*, two courts have discussed the exclusion to the personal injury protection statute as well as the consent to settle exclusion in the uninsured/underinsured motorist coverage statute.

In *Briones v. State Farm Mut. Auto. Ins. Co.*, 790 S.W.2d 70 (Tex.App.—San Antonio 1990, writ denied), the court relied upon language of the federal court in *Stephens v. State Farm Mut. Auto. Ins. Co.*, 508 F.2d 1363 (5th Cir.1975):

> As we read Texas cases, there is one key to determining whether a particular exclusionary provision in an uninsured motorist policy is valid or invalid. This is whether the invocation of the exclusion would, under the circumstances of the particular case under consideration, operate to deprive an insured of the protection required by the Texas Uninsured Motorists Statute.... (*citing Westchester Fire Ins. Co. v. Tucker*, 512 S.W.2d 679, 685 (Tex.1974)).
>
> In our view *Tucker* ... quite clearly hold[s] that exclusionary clauses are in-

valid restrictions on coverage when they excuse the policy for which a premium has been paid from providing the minimum coverage required by the Texas Uninsured Motorists Statute.... The question is whether the exclusion in the State Farm policy, if invoked, would cause the coverage of that policy to be less than the minimum $10,000/$20,000. Here it clearly would.

*Briones*, 790 S.W.2d at 74.

The final holding was to determine on a case-by-case basis whether the invocation of the exclusion would, under the circumstances of the particular case under consideration, operate to deprive an insured of the protection required by the statute. *Id.* We believe that in this case, the exclusion does not deprive Huttleston of the protection required by the statute.

In *Moore v. State Farm Mut. Auto. Ins. Co.*, 792 S.W.2d 818, 821 (Tex.App.—Houston [1st Dist.] 1990, no writ), the Houston court did not rely on the *Stephens* case. Instead, it relied upon *Holyfield v. Members Mut. Ins. Co.*, 566 S.W.2d 28, 30 (Tex. Civ.App.—Dallas), *writ ref'd n.r.e. per curiam*, 572 S.W.2d 672 (Tex.1978). There, the Dallas court found an exclusion valid for the policy reason that an insurer is entitled to accurately reflect in the policy the risks that are covered and to charge premiums based on these risks. Based on this policy reason, the court in *Moore* held that the "family member" exclusion for personal injury protection was valid. *Moore*, 792 S.W.2d at 821. We hold that the same policy reason, again, supports the invocation of the exclusion in the case at hand.

There is an additional reason to hold this clause enforceable in this case. In *United States Fidelity and Guar. Co. v. Cascio*, 723 S.W.2d 209 (Tex.App.—Dallas 1986, no writ), a motorist who dismissed with prejudice her action against the alleged tortfeasor without her insurer's consent could not subsequently recover against her insurer.

The court held that the dismissal with prejudice of the at-fault party removes the predicate for recovery under the provisions

of article 5.06–1 of the underinsured motorist coverage provisions. That provision specifically provides that the underinsured motorist coverage shall provide for payment to the insured of all sums *which he shall be legally entitled to recover* as damages, from owners or operators of underinsured motor vehicles, because of bodily injury or property damage, in an amount up to the limit specified in the policy, reduced by the amount recovered or recoverable from the insurer of the underinsured motor vehicle.

Consequently, the prior dismissal with prejudice of the at-fault party *removed any legal entitlement* that the injured had to further recovery against the at-fault party. Thus, any suit against the at-fault party by the injured (or her insurer) is no longer legally possible. *Cascio,* 723 S.W.2d at 210–11. This reasoning is applicable to the case at bar, wherein Huttleston released the at-fault party.

Huttleston relies upon the case of *Unigard Sec. Ins. Co. v. Schaefer,* 572 S.W.2d 303 (Tex.1978) as authority for the proposition that any exclusion not authorized by the pertinent insurance statute is void. However, Huttleston overlooks the statement made three paragraphs prior to the passage cited in his brief. The court also stated that the terms of the statute are clear that the basic policy's insuring agreements, (excluding premium, notice and other specified conditions which do not relate to exclusions) do not apply to the personal injury protection (PIP) required by article 5.06–3. as a basis for its holding. *Id.* at 306–07. So too, here, the terms of the statute are clear that the basic uninsured agreements *including the notice* and *consent to settle provision* do apply to the uninsured coverage, and are not an attempt to void or narrow the coverage. Otherwise, these provisions, too, would have been held void in *Unigard,* but were not. We decline to void them here on the grounds expressed in *Unigard.* Also, Huttleston overlooks the fact that article 5.06–1 expressly confers a right of subrogation on insurers, while the personal injury protection statute at issue in *Unigard* does not. Thus, the policy reason underlying the consent to settle exclusion relied upon in this case was not present in *Unigard.*

Alternatively, Huttleston argues that he is entitled to reformation of the contract so as to delete the consent to settle exclusion. However, Huttleston has provided no legal basis for this assertion.

Generally, the equitable reformation of a written contract is based upon the premise that a contract was actually made, but the written memorandum thereof, because of a mutual mistake, does not truly reflect the actual agreement of the parties. Reformation is a proper remedy when the parties have reached a definitive and explicit agreement, understood in the same sense by both, but, by their mutual or common mistake, the written contract fails to express the agreement. *Champlin Oil & Refining Co. v. Chastain,* 403 S.W.2d 376, 377 (Tex.1965). It is basic to the remedy of reformation that the true agreement between the parties be shown. Once such agreement is established, equity may reform the written instrument so as to conform thereto but cannot create and bring into being an agreement not made by the parties. *Martin v. Thalman,* 620 S.W.2d 151, 154 (Tex.Civ.App.—San Antonio 1981), *rev'd in part,* 635 S.W.2d 411 (Tex.1982).

One seeking reformation of a written instrument must prove the true agreement of the parties and prove that the erroneously written, included or omitted provision in the instrument was there by mutual mistake. *National Resort Communities v. Cain,* 526 S.W.2d 510 (Tex.1975). As of the date when the contract was entered into by Huttleston and Beacon, the language now at issue was valid. As of July 1988, when Huttleston released Riddle without Beacon's consent, the language of the contract was valid. As we hold today, the language of the contract was valid. Therefore, there was no mutual mistake as to the meaning of the consent to settle exclusion. If there was a mistake at all, it was Huttleston's unilateral mistake, and this is insufficient to entitle Huttleston to reformation. Huttleston's first point of error is overruled.

In his second point of error, Huttleston argues that it was error for the trial court to fail to grant his partial motion for summary judgment. This motion was based upon TEX.INS.CODE ANN. art. 21.21 § 16 (Vernon Supp.1991).[3] Huttleston urges that by asserting the consent to settle exclusion, Beacon has engaged in actionable misrepresentation. As we have held the exclusion is valid, this point must fail. Huttleston's second point of error is overruled.

In his final point, Huttleston urges that it was error to overrule his motion for new trial based upon the newly discovered evidence that the at-fault party, Riddle, had declared bankruptcy. He urges that this occurrence renders Beacon's subrogation rights moot, and, thus, the consent to settle exclusion should be invalidated in this case only, because Beacon has suffered no prejudice. Huttleston ignores the fact that had he not released Riddle two years ago, Beacon may have perfected a claim against him in 1989, and might now still be able to recover, albeit not fully, even though Riddle has sought bankruptcy protection. Huttleston's final point of error is overruled.

The judgment of the trial court is affirmed.

---

3. This provision provides that a consumer may recover actual damages as a result of an insurance company's engaging in any act or practice declared to be unfair or deceptive. *See Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129 (Tex.1988).