Leal v. Northwestern 




IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN





 






NO. 3-92-400-CV






FRANCES LEAL,




 APPELLANT



vs.






NORTHWESTERN NATIONAL COUNTY MUTUAL INSURANCE COMPANY,



 APPELLEE




 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT



NO. 91-3060, HONORABLE JOE B. DIBRELL, JUDGE PRESIDING



 






 Frances Leal, appellant, filed suit against Verna Appling to recover damages arising
out of an automobile accident between Leal and Appling. Leal also sued her own insurance
carrier, Northwestern National County Mutual Insurance Company ("Northwestern"), appellee,
to recover underinsured-motorist benefits. Leal settled her claim against Appling. The trial court
then rendered summary judgment that Leal take nothing against Northwestern. Leal perfected this
appeal. We will reverse the trial court's judgment and remand the cause.



BACKGROUND


 In May 1990 Leal was involved in an automobile accident with Appling. Following
the accident, Leal filed suit against Appling, alleging that Appling was negligent. In addition,
Leal filed suit against Northwestern to recover under her own automobile policy's underinsured-motorist coverage, which had a $20,010 limit.

 In answer to interrogatories from Leal, Appling stated under oath that at the time
of the accident she had bodily injury liability coverage in the amount of $20,000 per person. Leal
later negotiated a settlement of all claims against Appling for $20,000. Before the settlement was
completed, Appling's attorney received information from Appling's insurer that she actually had
liability coverage in the amount of $25,000 per person. Appling's attorney advised Leal's
attorney of this new information at or near the time of the final settlement.

 Following the settlement, Northwestern filed a motion for summary judgment
asserting that, because Leal had settled with Appling for less than the limits of Appling's liability
coverage, Appling was not an underinsured motorist and Leal could not recover from
Northwestern under her underinsured-motorist coverage. The trial court agreed and granted
Northwestern's motion, rendering judgment that Leal take nothing.



DISCUSSION


 In five points of error, Leal complains that the trial court erred in granting
summary judgment because Northwestern failed to establish as a matter of law that Leal was not
entitled to recover under her underinsured-motorist coverage. As the movant for summary
judgment, Northwestern had the burden of showing that no genuine issue of material fact existed
and that it was entitled to judgment as a matter of law. Nixon v. Mr. Property Mgmt. Co., 690
S.W.2d 546, 548-49 (Tex. 1985). In reviewing a summary judgment, we are required to take all
evidence favorable to the non-movant (Leal) as true, to indulge every reasonable inference in her
favor, and to resolve any doubts in her favor. Id.

 In its motion for summary judgment, Northwestern asserted that "Ms. Appling as
the negligent party was not an underinsured motorist since $5,000 of her liability insurance policy
remained to compensate [Leal] for her actual damages. Accordingly, Ms. Appling was not an
underinsured motorist, and [Leal's] claim against [Northwestern] must fail as a matter of law." 
As used by Northwestern, the term "underinsured motorist" is synonymous with "underinsured
motor vehicle," which is defined by the Insurance Code as



an insured motor vehicle on which there is valid and collectible liability insurance
coverage with limits of liability for the owner or operator which were originally
lower than, or have been reduced by the payment of claims arising from the same
accident to, an amount less than the limit of liability stated in the underinsured
coverage of the insured's policy.



Tex. Ins. Code Ann. art. 5.06-1(2)(b) (West Supp. 1993) (emphasis added).

 The Texas Supreme Court has construed the portion of article 5.06-1(2)(b)
emphasized above to mean that "`payment of claims' includes any payments made by the liability
insurance carrier to the beneficiary of an underinsured motorist policy as well as to any other
persons who may have suffered damages in the same accident." Stracener v. United Servs. Auto.
Ass'n, 777 S.W.2d 378, 383 (Tex. 1989) (emphasis added). As applied to the present case,
therefore, the payment made by Appling's insurance carrier to Leal effectively reduced the limits
of Appling's liability coverage for purposes of determining her status as an underinsured motorist
under the statutory definition. Thus, even if the limit of Appling's liability coverage were
$25,000, that sum was reduced by the $20,000 paid in settlement to Leal, leaving Appling with
$5,000 remaining liability coverage. Because this $5,000 in remaining coverage was less than
the $20,010 limit of underinsured-motorist coverage stated in Leal's policy, Appling was an
underinsured motorist as defined by article 5.06-1(2)(b) and as construed by Stracener. (1)

 Although it appears that Northwestern based its motion for summary judgment on
Appling's alleged lack of underinsured-motorist status, its argument can be broadly interpreted
as a claim that, even if Appling qualified as an underinsured motorist, Leal waived her right to
recover from Northwestern because Leal settled for an amount less than the liability limit of
Appling's policy. In essence, Northwestern argues that Leal is required to "exhaust the limits"
of Appling's insurance coverage before Leal is entitled to recover under her own policy. 

 Northwestern does not assert that any provision in Leal's policy required her to
exhaust Appling's insurance coverage before pursuing her underinsured-motorist claim. 
Accordingly, we must look to the statute to determine if Leal was required to do so. In making
this determination, we must construe article 5.06-1 liberally to give full effect to the underlying
purpose of the statute. Stracener, 777 S.W.2d at 382. The purpose, as stated in the statute, is
"the protection of persons insured thereunder who are legally entitled to recover damages from
owners or operators of uninsured or underinsured motor vehicles." Tex. Ins. Code Ann.
art. 5.06-1(1) (West 1981).

 Article 5.06-1(5) of the Insurance Code explains the recovery available to an
insured from underinsured-motorist coverage in circumstances where the insured has received
payment from the underinsured motorist's insurance carrier:



The underinsured motorist coverage shall provide for payment to the insured of all
sums which he shall be legally entitled to recover as damages from owners or
operators of underinsured motor vehicles because of bodily injury or property
damage in an amount up to the limit specified in the policy, reduced by the amount
recovered or recoverable from the insurer of the underinsured motor vehicle.



Tex. Ins. Code Ann. art. 5.06-1(5) (West 1981) (emphasis added). (2) By its plain language, article
5.06-1(5) does not contain any requirement that an insured recover the full amount available under
the tortfeasor's insurance coverage in order to pursue a claim under his own underinsured-motorist
coverage. Rather, it simply requires that the insured's recovery of actual damages be reduced by
the amount "recovered or recoverable" from the tortfeasor's insurance carrier.

 For purposes of this discussion, we assume that $25,000 was recoverable, though
not fully recovered, under Appling's liability coverage. Nonetheless, we decline to interpret
article 5.06-1(5) so narrowly as to prevent Leal's recovery for her damages that exceed $25,000
simply because she settled for less than the full policy limit of Appling's coverage. The amount
of a settlement does not define the extent of damages. We conclude that the better rule is to
deduct from the insured's damage recovery the amount recoverable from the insurer of the
underinsured motorist. In the present case, therefore, once Leal's actual damages are determined,
the full amount recoverable from Appling's insurance carrier (i.e., the policy limits) should be
deducted, whereafter Leal will be entitled to recover from Northwestern the remainder of her
actual damages up to the $20,010 liability limit of her underinsured-motorist coverage. This rule
provides an equitable resolution for both the insured and the insurer and gives full effect to the
underlying purpose of article 5.06-1.

 Northwestern contends, however, that allowing an insured to pursue an
underinsured-motorist claim under her own policy without exhausting the limits of the tortfeasor's
insurance coverage will expose insurance carriers to unanticipated risks because insurance
premiums are computed in light of the statutorily required minimum liability limits. We disagree. 
Northwestern's argument assumes that the set-off required under article 5.06-1(5) is only the
amount actually recovered, not the amount recoverable. Because we have concluded above that
the set-off required in these circumstances is the amount recoverable, there is no unanticipated risk
involved. The set-off will be calculated as if the insured had exhausted the limits of the
tortfeasor's insurance coverage.

 Our conclusion finds support in the holdings of courts in other jurisdictions. See,
e.g., Buzzard v. Farmers Ins. Co., 824 P.2d 1105, 1110-12 (Okla. 1991); Hamilton v. Farmers
Ins. Co., 733 P.2d 213, 216-17 (Wash. 1987); cf. Vogt v. Schroeder, 383 N.W.2d 876 (Wis.
1986). Indeed, even though the insurance policy forms of many states contain an express
requirement that the tortfeasor's insurance coverage must be exhausted before an insured can
pursue his own underinsured-motorist coverage, several courts have concluded that such
exhaustion clauses are invalid as against public policy. See, e.g., Weinstein v. American Mut. Ins.
Co., 376 So.2d 1219, 1220 (Fla. Dist. App. Ct. 1979); Mulholland v. State Farm Mut. Auto. Ins.
Co., 527 N.E.2d 29, 40 (Ill. Ct. App. 1988); Schmidt v. Clothier, 338 N.W.2d 256, 260-61
(Minn. 1983); Longworth v. Van Houten, 538 A.2d 414, 420 (N.J. Super. Ct. App. Div. 1988). 
But see Continental Ins. Co. v. Cebe-Habersky, 571 A.2d 104, 106 (Conn. 1990) (exhaustion
requirement in statute upheld); Robinette v. American Liberty Ins. Co., 720 F.Supp. 577, 580
(S.D. Miss. 1989) (exhaustion clause in policy upheld), aff'd mem., 896 F.2d 552 (5th Cir.
1990). (3)

 Northwestern cites James v. Holmes, 590 So.2d 1350 (La. Ct. App. 1991), as
authority for a contrary result. We have some doubt that James stands for the proposition that
a tortfeasor will not be considered underinsured if the injured party settles for less than the limits
of the tortfeasor's insurance coverage, because that does not appear to be Louisiana law. See
Niemann v. Travelers Ins. Co., 368 So.2d 1003 (La. 1979). In any event, if James does stand
for that proposition, we do not find the opinion persuasive and we decline to follow it.

 Based on the foregoing analysis, we conclude that Northwestern failed to
demonstrate that it was entitled to judgment as a matter of law. We sustain Leal's first, second,
third, and fifth points of error.

 Leal complains in her fourth point of error that, under the summary-judgment
evidence, a fact issue exists as to whether Appling's liability coverage was $20,000 or $25,000. 
In light of the foregoing discussion and our disposition of Leal's other points of error, this issue
is immaterial; Appling's remaining liability limit in either circumstance would be less than the
$20,010 underinsured-motorist coverage provided in Leal's policy. Accordingly, we do not
address her fourth point of error.

 We reverse the judgment of the trial court and remand the cause for further
proceedings consistent with this opinion.



 

 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Reversed and Remanded

Filed: January 27, 1993

[Publish]

1.   Northwestern argues that Stracener does not control the present case, in which only
one underinsured-motorist policy is at issue, because Stracener focused on the issue of
"stacking" more than one underinsured insurance policy to determine underinsured motorist
status. We disagree. In Stracener, the court did not rely on the stacking approach in reaching
its decision; rather, the court focused on interpreting the "payment of claims" phrase of article
5.06-1(2)(b) and adopted a new test for determining whether a tortfeasor is an underinsured
motorist. See Sarajane Milligan, Comment, A Negligent Party Is Underinsured Whenever
Available Proceeds from His Liability Insurance Are Insufficient to Compensate the Injured
Party's Actual Damages; Statutorily Provided Set-Off Is to Be Subtracted from Amount of
Actual Damages Incurred: Stracener v. United Services Automobile Ass'n, 777 S.W.2d 378
(Tex. 1989), 32 S. Tex. L. Rev. 153, 166-67 (1990). We incorporate this test in reaching our
decision in the present case.
2.   In Stracener, the supreme court construed this provision to require the amount recovered
or recoverable from the underinsured motorist to be subtracted from the amount of actual
damages incurred as a result of the underinsured motorist's negligence rather than from the
limits specified in the underinsured-motorist policy. 777 S.W.2d at 380. 
3.   In the present case, Northwestern does not contend that Leal's policy contained an
exhaustion clause. Accordingly, we do not address whether such a policy provision would
be valid under Texas law; rather, we simply conclude that neither article 5.06-1 of the
Insurance Code nor other state law requires exhaustion of the tortfeasor's insurance
coverage as a prerequisite to claiming underinsured-motorist benefits.