**Frances LEAL,**

v.

**NORTHWESTERN NATIONAL COUNTY MUTUAL INSURANCE COMPANY.**

**No. 3–92–400–CV.**

Court of Appeals of Texas, Austin.

Jan. 27, 1993.

Rehearing Overruled Feb. 24, 1993.

Russell D. Daves, Lubbock, for appellant.

J. Gordon McHaney, Lea & Chamberlain, Austin, for appellee.

Before CARROLL, C.J., and JONES and KIDD, JJ.

JONES, Justice.

Frances Leal, appellant, filed suit against Verna Appling to recover damages arising out of an automobile accident between Leal and Appling. Leal also sued her own insurance carrier, Northwestern National County Mutual Insurance Company ("Northwestern"), appellee, to recover underinsured-motorist benefits. Leal settled her claim against Appling. The trial court then rendered summary judgment that Leal take nothing against Northwestern. Leal perfected this appeal. We will reverse the trial court's judgment and remand the cause.

## BACKGROUND

In May 1990 Leal was involved in an automobile accident with Appling. Following the accident, Leal filed suit against Appling, alleging that Appling was negligent. In addition, Leal filed suit against Northwestern to recover under her own automobile policy's underinsured-motorist coverage, which had a $20,010 limit.

In answer to interrogatories from Leal, Appling stated under oath that at the time of the accident she had bodily injury liability coverage in the amount of $20,000 per person. Leal later negotiated a settlement of all claims against Appling for $20,000. Before the settlement was completed, Appling's attorney received information from

Appling's insurer that she actually had liability coverage in the amount of $25,000 per person. Appling's attorney advised Leal's attorney of this new information at or near the time of the final settlement.

Following the settlement, Northwestern filed a motion for summary judgment asserting that, because Leal had settled with Appling for less than the limits of Appling's liability coverage, Appling was not an underinsured motorist and Leal could not recover from Northwestern under her underinsured-motorist coverage. The trial court agreed and granted Northwestern's motion, rendering judgment that Leal take nothing.

## DISCUSSION

 In five points of error, Leal complains that the trial court erred in granting summary judgment because Northwestern failed to establish as a matter of law that Leal was not entitled to recover under her underinsured-motorist coverage. As the movant for summary judgment, Northwestern had the burden of showing that no genuine issue of material fact existed and that it was entitled to judgment as a matter of law. *Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). In reviewing a summary judgment, we are required to take all evidence favorable to the non-movant (Leal) as true, to indulge every reasonable inference in her favor, and to resolve any doubts in her favor. *Id.*

In its motion for summary judgment, Northwestern asserted that "Ms. Appling as the negligent party was not an underinsured motorist since $5,000 of her liability insurance policy remained to compensate [Leal] for her actual damages. Accordingly, Ms. Appling was not an underinsured motorist, and [Leal's] claim against [North-

western] must fail as a matter of law." As used by Northwestern, the term "underinsured motorist" is synonymous with "underinsured motor vehicle," which is defined by the Insurance Code as

> an insured motor vehicle on which there is valid and collectible liability insurance coverage with limits of liability for the owner or operator which were originally lower than, *or have been reduced by the payment of claims arising from the same accident* to, an amount less than the limit of liability stated in the underinsured coverage of the insured's policy.

Tex.Ins.Code Ann. art. 5.06–1(2)(b) (West Supp.1993) (emphasis added).

 The Texas Supreme Court has construed the portion of article 5.06–1(2)(b) emphasized above to mean that " 'payment of claims' includes any payments made by the liability insurance carrier to *the beneficiary of an underinsured motorist policy* as well as to any other persons who may have suffered damages in the same accident." *Stracener v. United Servs. Auto. Ass'n,* 777 S.W.2d 378, 383 (Tex.1989) (emphasis added). As applied to the present case, therefore, the payment made by Appling's insurance carrier to Leal effectively reduced the limits of Appling's liability coverage for purposes of determining her status as an underinsured motorist under the statutory definition. Thus, even if the limit of Appling's liability coverage were $25,000, that sum was reduced by the $20,000 paid in settlement to Leal, leaving Appling with $5,000 remaining liability coverage. Because this $5,000 in remaining coverage was less than the $20,010 limit of underinsured-motorist coverage stated in Leal's policy, Appling was an underinsured motorist as defined by article 5.06–1(2)(b) and as construed by *Stracener.*[1]

---

1. Northwestern argues that *Stracener* does not control the present case, in which only one underinsured-motorist policy is at issue, because *Stracener* focused on the issue of "stacking" more than one underinsured insurance policy to determine underinsured motorist status. We disagree. In *Stracener,* the court did not rely on the stacking approach in reaching its decision; rather, the court focused on interpreting the "payment of claims" phrase of article 5.06–1(2)(b) and adopted a new test for deter-

mining whether a tortfeasor is an underinsured motorist. *See* Sarajane Milligan, Comment, *A Negligent Party Is Underinsured Whenever Available Proceeds from His Liability Insurance Are Insufficient to Compensate the Injured Party's Actual Damages; Statutorily Provided Set–Off Is to Be Subtracted from Amount of Actual Damages Incurred: Stracener v. United Services Automobile Ass'n,* 777 S.W.2d 378 (Tex.1989), 32 S.Tex.L.Rev. 153, 166–67 (1990). We incorpo-

■ Although it appears that Northwestern based its motion for summary judgment on Appling's alleged lack of underinsured-motorist status, its argument can be broadly interpreted as a claim that, even if Appling qualified as an underinsured motorist, Leal waived her right to recover from Northwestern because Leal settled for an amount less than the liability limit of Appling's policy. In essence, Northwestern argues that Leal is required to "exhaust the limits" of Appling's insurance coverage before Leal is entitled to recover under her own policy.

Northwestern does not assert that any provision in Leal's policy required her to exhaust Appling's insurance coverage before pursuing her underinsured-motorist claim. Accordingly, we must look to the statute to determine if Leal was required to do so. In making this determination, we must construe article 5.06–1 liberally to give full effect to the underlying purpose of the statute. *Stracener,* 777 S.W.2d at 382. The purpose, as stated in the statute, is "the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles." Tex.Ins.Code Ann. art. 5.06–1(1) (West 1981).

Article 5.06–1(5) of the Insurance Code explains the recovery available to an insured from underinsured-motorist coverage in circumstances where the insured has received payment from the underinsured motorist's insurance carrier:

> The underinsured motorist coverage shall provide for payment to the insured of all sums which he shall be legally entitled to recover as damages from owners or operators of underinsured motor vehicles because of bodily injury or property damage in an amount up to the limit specified in the policy, *reduced by the amount recovered or recoverable from*

*the insurer of the underinsured motor vehicle.*

Tex.Ins.Code Ann. art. 5.06–1(5) (West 1981) (emphasis added).[2] By its plain language, article 5.06–1(5) does not contain any requirement that an insured recover the full amount available under the tortfeasor's insurance coverage in order to pursue a claim under his own underinsured-motorist coverage. Rather, it simply requires that the insured's recovery of actual damages be reduced by the amount "recovered or recoverable" from the tortfeasor's insurance carrier.

For purposes of this discussion, we assume that $25,000 was recoverable, though not fully recovered, under Appling's liability coverage. Nonetheless, we decline to interpret article 5.06–1(5) so narrowly as to prevent Leal's recovery for her damages that exceed $25,000 simply because she settled for less than the full policy limit of Appling's coverage. The amount of a settlement does not define the extent of damages. We conclude that the better rule is to deduct from the insured's damage recovery the amount *recoverable* from the insurer of the underinsured motorist. In the present case, therefore, once Leal's actual damages are determined, the full amount recoverable from Appling's insurance carrier (i.e., the policy limits) should be deducted, whereafter Leal will be entitled to recover from Northwestern the remainder of her actual damages up to the $20,010 liability limit of her underinsured-motorist coverage. This rule provides an equitable resolution for both the insured and the insurer and gives full effect to the underlying purpose of article 5.06–1.

Northwestern contends, however, that allowing an insured to pursue an underinsured-motorist claim under her own policy without exhausting the limits of the tortfeasor's insurance coverage will expose insurance carriers to unanticipated risks because insurance premiums are computed in

---

rate this test in reaching our decision in the present case.

**2.** In *Stracener,* the supreme court construed this provision to require the amount recovered or recoverable from the underinsured motorist to

be subtracted *from the amount of actual damages* incurred as a result of the underinsured motorist's negligence rather than from the limits specified in the underinsured-motorist policy. 777 S.W.2d at 380.

light of the statutorily required minimum liability limits. We disagree. Northwestern's argument assumes that the set-off required under article 5.06–1(5) is only the amount actually recovered, not the amount recoverable. Because we have concluded above that the set-off required in these circumstances is the amount recoverable, there is no unanticipated risk involved. The set-off will be calculated *as if* the insured had exhausted the limits of the tortfeasor's insurance coverage.

Our conclusion finds support in the holdings of courts in other jurisdictions. *See, e.g., Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1110–12 (Okla.1991); *Hamilton v. Farmers Ins. Co.*, 107 Wash.2d 721, 733 P.2d 213, 216–17 (1987); *cf. Vogt v. Schroeder*, 129 Wis.2d 3, 383 N.W.2d 876 (1986). Indeed, even though the insurance policy forms of many states contain an express requirement that the tortfeasor's insurance coverage must be exhausted before an insured can pursue his own underinsured-motorist coverage, several courts have concluded that such exhaustion clauses are invalid as against public policy. *See, e.g., Weinstein v. American Mut. Ins. Co.*, 376 So.2d 1219, 1220 (Fla.Dist.App.Ct.1979); *Mulholland v. State Farm Mut. Auto. Ins. Co.*, 171 Ill.App.3d 600, 122 Ill.Dec. 657, 527 N.E.2d 29, 40 (1988); *Schmidt v. Clothier*, 338 N.W.2d 256, 260–61 (Minn.1983); *Longworth v. Van Houten*, 223 N.J.Super. 174, 538 A.2d 414, 420 (App.Div.1988). *But see Continental Ins. Co. v. Cebe–Habersky*, 214 Conn. 209, 571 A.2d 104, 106 (1990) (exhaustion requirement in statute upheld); *Robinette v. American Liberty Ins. Co.*, 720 F.Supp. 577, 580 (S.D.Miss.1989) (exhaustion clause in policy upheld), *aff'd mem.*, 896 F.2d 552 (5th Cir.1990).[3]

Northwestern cites *James v. Holmes*, 590 So.2d 1350 (La.Ct.App.1991), as authority for a contrary result. We have some doubt that *James* stands for the proposition that a tortfeasor will not be considered underinsured if the injured party settles

for less than the limits of the tortfeasor's insurance coverage, because that does not appear to be Louisiana law. *See Niemann v. Travelers Ins. Co.*, 368 So.2d 1003 (La. 1979). In any event, if *James* does stand for that proposition, we do not find the opinion persuasive and we decline to follow it.

Based on the foregoing analysis, we conclude that Northwestern failed to demonstrate that it was entitled to judgment as a matter of law. We sustain Leal's first, second, third, and fifth points of error.

Leal complains in her fourth point of error that, under the summary-judgment evidence, a fact issue exists as to whether Appling's liability coverage was $20,000 or $25,000. In light of the foregoing discussion and our disposition of Leal's other points of error, this issue is immaterial; Appling's remaining liability limit in either circumstance would be less than the $20,010 underinsured-motorist coverage provided in Leal's policy. Accordingly, we do not address her fourth point of error.

We reverse the judgment of the trial court and remand the cause for further proceedings consistent with this opinion.

---

3. In the present case, Northwestern does not contend that Leal's policy contained an exhaustion clause. Accordingly, we do not address whether such a policy provision would be valid under Texas law; rather, we simply conclude

that neither article 5.06–1 of the Insurance Code nor other state law requires exhaustion of the tortfeasor's insurance coverage as a prerequisite to claiming underinsured-motorist benefits.