NO. 07-01-0377-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 30, 2001

_____

IN RE TRINITY UNIVERSAL INSURANCE COMPANY, RELATOR

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

By this original proceeding, relator Trinity Universal Insurance Company (Trinity) seeks a writ of mandamus to compel respondent, the Honorable Steven R. Emmert, presiding judge of the 31st District Court of Gray County, to vacate his order signed September 14, 2001, and enter an order granting Trinity's motion for severance and abatement in its entirety in cause number 31,677 styled Lilith Brainard, *et al.* v. Premier Well Service, Inc., *et al.* (Premier).[1]  For the reasons expressly below, we conditionally grant the petition for writ of mandamus.

_____

[1]Real Parties in interest include Lilith Brainard, Sally Brainard Wicker, E. Swasey F. Brainard, II, Amy Brainard, Berklee Brainard Clements, Sena Brainard and the Estate of Edward H. Brainard, II, collectively referred to as the Brainards.

Trinity issued its insurance policy to Brainard Cattle Company, E.S.F. Brainard, *et al.* for a policy period commencing August 26, 1998 through August 26, 1999. Among other provisions, the policy included an uninsured/underinsured (UIM) motorists insurance endorsement. Edward H. Brainard, II, an insured under the policy, sustained fatal injuries in a head on collision with a motorized work over rig owned and operated by an employee of Premier. After the Brainards filed their original petition in the underlying action against Premier and its employee seeking to recover damages occasioned by the accident and discovered that the limits of liability insurance for Premier did not exceed one million dollars, the Brainards made a written claim on April 18, 2000 for UIM benefits and Trinity acknowledged receipt of the claim and requested supporting information.

By their second amended petition filed October 30, 2000, the Brainards joined Trinity as a defendant and asserted several claims pursuant to the contract, including claims under the UIM endorsement and good faith/unfair settlement practices and article 21.55 of the Texas Insurance Code entitled Prompt Payment of Claims. Tex. Ins. Code Ann. art. 21.55 (Vernon Pamph Supp. 2001). Following the Brainards' settlement with and dismissal of their claims against Premier and the operator of its equipment,[2] by order signed June 11, 2001, among other things, the trial court denied Trinity's first motion for severance. Then, on June 29, 2001, Trinity filed it's second motion for severance and

_____

[2]The order of dismissal as to Premier and its operator did not dismiss the Brainards' claims against Trinity.

2

abatement, which the trial court partially granted. The trial court severed the Brainards' good faith/unfair settlement practices and article 21.21 claims, but denied severance of the article 21.55 claim. Because the Brainards do not challenge the severance of their good faith/unfair settlement practices and article 21.21 claims, the question presented for our decision is whether the trial court abused its discretion in failing to grant the motion for severance of the Brainards' claims under article 21.55 as applicable to their UIM claims.

## Standards of Review

**Severance.** Rule 41 of the Texas Rules of Civil Procedure provides that "[a]ny claim against a party may be severed and proceeded with separately." In McGuire v. Commercial Union Insurance Co. of N.Y., 431 S.W.2d 347, 351 (Tex. 1968), the Court held that the rule refers to a claim "which is a severable part of a controversy which involves more than one cause of action. [Citation omitted]. Rule 41 grants the trial judge broad discretion in the matter of consolidation and severance of causes." *Id.* The objective of a severance is to do justice, avoid prejudice, and further convenience. Guaranty Federal v. Horseshoe Operating, 793 S.W.2d 652, 658 (Tex. 1990). A claim is properly severable if (1) the controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the severed claim is not so interwoven with the remaining action that they involve the same facts and issues. *Id*; Lusk v. Puryear, 896 S.W.2d 377, 379 (Tex.App.--Amarillo 1995, orig. proceeding). The rule, however, does not contemplate the severance of one cause of

3

action into two or more parts. Pierce v. Reynolds, 160 Tex. 198, 329 S.W.2d 76, 78 (1959).

**Mandamus**. Because Trinity's challenge to the order denying severance as to the article 21.55 claim is addressed to an abuse of discretion vested in the trial court, Trinity carries a heavy burden. To prevail Trinity "must establish, under the circumstances of the case, that the facts and law permit the trial court to make but one decision." Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917 (Tex. 1985). In reviewing rulings within the trial court's discretion, we may not substitute our judgment for that of the trial court. *Id.* at 918. Nor may we resolve factual disputes in mandamus proceedings. Brady v. Fourteenth Court of Appeals, 795 S.W.2d 712, 714 (Tex. 1990). However, our review of the trial court's determination of applicable law is less deferential because a trial court has no discretion to determine what the law is or apply the law to the facts. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). Thus, a clear failure of the trial court to analyze or apply the law correctly will constitute an abuse of discretion.

A writ of mandamus will issue only where there is no adequate remedy at law and to correct "a *clear* abuse of discretion." (Emphasis added). *Johnson*, 700 S.W.2d at 918. The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the act was arbitrary and unreasonable. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). The fact that a trial judge may decide a matter within his discretion in a different manner than an appellate

4

judge in similar circumstances does not demonstrate that an abuse of discretion has occurred. *Id.*

Analysis

We commence our analysis by focusing on Trinity's grounds for its motion for severance and the coverage provision of the UIM endorsement. By its second motion for severance and abatement, in summary, Trinity contended:

> **First.** The UIM claim should be severed from the extra-contractual claims because evidence of settlement negotiations and insurance policy limits may be relevant to the extra-contractual claims but is not admissible as to the UIM claims.
>
> **Second.** Trinity should not be required to undergo the expense of discovery as to the extra-contractual claims, when there is a substantial possibility that the damages awarded in the contract claim will not exceed the limit of the tortfeasor's policy, and thus will not even trigger the UIM endorsement, which would preclude any necessity to discover or litigate the extra-contractual claims.

The coverage provision of the UIM endorsement in the policy provides:

> We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an insured, or property damage caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.
>
> Any judgment for damages arising out of a suit brought without our written consent is not binding on us. If we and you do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on us.

5

By their second amended petition by which Trinity was joined as a defendant, the Brainards alleged that although they had made a claim for UIM benefits under the policy before filing suit against Trinity, no benefits were paid under the policy. In addition to contract damages, the Brainards also sought to recover interest and attorney's fees under article 21.55, in addition to claims of good faith/unfair settlement practices.

## Severability of UIM and Article 21.55 Claims

Although the Brainards do not challenge Trinity's statement that it made an offer to settle the UIM claim, they contend severance was not proper under Lusk v. Puryear, 896 S.W.2d 377 (Tex.App.--Amarillo 1995, orig. proceeding). From the limited record, it appears that the trial court based its decision to deny the severance of the UIM prompt payment on our decision in *Lusk*; however, *Lusk* is not controlling because of the provisions of the UIM endorsement, the recent decision in Allstate Ins. Co. v. Bonner, 51 S.W.3d 289 (Tex. 2001), and other reasons discussed below.

*Lusk* did not involve a claim for UIM benefits. In *Lusk*, we held that a cross-action against an insurer for breach of contract and for statutory damages for failure to promptly pay personal injury protection benefits constituted one cause of action and that a severance of the claims was improper. 896 S.W.2d at 380. However, unlike personal injury protection benefit coverage, the provisions of the UIM endorsement condition payment of benefits upon a determination of liability of the UIM motorist and damages. In

6

Henson v. Texas Farm Bureau Mut. Ins. Co, 989 S.W.2d 837, 839-40 (Tex.App.--Amarillo 1999), *aff'd*, 17 S.W.3d 652 (Tex. 2000), we denied an award of prejudgment interest because the condition precedent provision in the contract for payment of the UIM claim remained to be determined when the UIM claim was presented.  The Brainards' claim for UIM benefits is contractual in nature.  *See Henson*, 17 S.W.3d at 653-54; *see also* U.S. Fire Ins. Co v. Millard, 847 S.W.2d 668, 672-73 (Tex.App.--Houston [1ˢᵗ Dist.]1993, orig. proceeding) (holding that a breach of insurance contract claim is separate and distinct from bad faith, Insurance Code, or DTPA claims, and

> [u]ninsured motorist claims and bad faith claims have been recognized as separate and distinct causes of action which might each constitute a complete lawsuit within itself.

*Citing* State Farm Ins.  Co. v. Wilborn, 835 S.W.2d 260, 261 (Tex.App.--Houston [14ᵗʰ Dist.] 1992, orig. proceeding).  In *Bonner*, 51 S.W.3d at 291-92, which involved a prompt payment claim under UIM endorsement, the Court held that in order to establish a UIM claim under the policy, the claimant must prove not only that the UIM driver negligently caused the accident that resulted in the covered damages, but also that all applicable policy provisions were satisfied.  The Court also denied an award of attorney's fees under section 6 of article 21.55.  Also, in State Farm Mut. Auto Ins. Co. v. Grayson, 983 S.W.2d 769, 770 (Tex.App.--San Antonio 1998, no pet.), cited with approval in *Bonner*, 51 S.W.3d at 292, the court stated the rules that a claimant must (1) establish the negligence of the

7

UIM operator and the amount of claimant's damages, and (2) that the operator was in fact uninsured.

State Farm Ins. Co. v. Wilborn, 835 S.W.2d 260 (Tex.App.--Houston [14th Dist.] 1992, orig. proceeding) and U.S. Fire Ins. Co. v. Millard, 847 S.W.2d 668 (Tex.App.--Houston [1st Dist.] 1993, orig. proceeding) recognize that because uninsured motorist claims and bad faith claims are separate and distinct causes of action and each may constitute a complete lawsuit, severance of the claims and abatement of the bad faith claims is appropriate because of the irreconcilable conflict between the respective parties' interests if severance is denied. Further, in *Millard*, 847 S.W.2d at 673, in its discussion of abatement the court recognized that judicial efficiency may be enhanced by severance and abatement because litigation of the extra-contractual claims may never be required because of the results of the contract litigation, which is addressed in Trinity's second ground.[3]  Because (1) the claim for UIM benefits is contractual and the claim for penalty under article 21.55 controversy involves more than one cause of action, (2) the severed claim is one that would be the proper subject of a lawsuit if independently asserted, and (3) the article 21.55 claim is not so interwoven with the tort action and contract action that they involve the same facts and issues, the claim for damages under article 21.55 was severable.

---

[3]Severance of the article 21.55 claim will not require additional litigation because the trial court did order a severance of the bad faith and article 21.21 claims.

## Mandamus

Having determined that the article 21.55 claim was severable, we must now determine whether a writ of mandamus is appropriate, which requires that we find that (1) the trial court abused its discretion, and (2) that Trinity has no adequate remedy at law. Regarding the abuse of discretion finding, our analysis above demonstrates that it is clear that a UIM claim does not mature until the claimant establishes that the negligence of the UIM motorist (1) caused the accident and the amount of damages, (2) the motorist was in fact underinsured, and (3) severance of the article 21.55 claim as it relates to the UIM claim is appropriate, and the trial court abused its discretion in denying the severance of the article 21.55 claim.

Regarding the adequate remedy at law factor, Trinity contends that it has none and that mandamus is necessary because of the unacceptable dilemma presented if it is forced to try both the fundamental issues of liability in conjunction with claims addressing its evaluation of liability. *Wilborn*, 835 S.W.2d at 262. As in *Millard*, 847 S.W.2d at 675-76, we conclude that Trinity has a substantial right to the exclusion from evidence of its settlement offers and negotiations in the trial of the UIM claim. Also, severance is favored for reasons of judicial economy and to avoid the potential of unnecessary expense to the parties for similar reasons. *Id.* We conclude that Trinity does not have an adequate remedy at law.

9

Laches and Motion for Sanctions

We have not overlooked the Brainards' defense of laches and motion for sanctions. Contending that Trinity knew or should have known that the trial court intended to deny severance of the article 21.55 claim since at least August 8, 2001, the Brainards assert that laches bars mandamus and that Trinity should be sanctioned because the mandamus proceeding was merely brought for delay. We disagree. Even if counsel for Trinity were aware in early August that the trial court had decided to deny the severance as to the article 21.55 claim, the trial court did not sign its order granting the motion as to some claims and denying the severance as to the article 21.55 claim until September 14, 2001. Because the petition for mandamus was filed on September 17, 2001, laches does not apply and the Brainards' motion for sanctions is denied.

Concluding that the trial court abused its discretion in denying severance of the article 21.55 claim as related to the Brainards' UIM claim, and finding that Trinity has no adequate remedy at law, we conditionally grant the petition for writ of mandamus. We are confident the trial court will now grant the motion to sever the article 21.55 claim from the contract claim in accordance with this opinion. We instruct the Clerk to issue the writ only if the trial court fails to grant the motion within thirty days.

Don H. Reavis
Justice

Publish.

10