NO. 07-03-0170-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

MARCH 1, 2004

_____


TRINITY UNIVERSAL INSURANCE COMPANY, APPELLANT

V.

LILITH BRAINARD, ET AL., APPELLEES


_____

FROM THE 31ST DISTRICT COURT OF GRAY COUNTY;

NO. 31,677; HONORABLE STEVEN R. EMMERT, JUDGE

_____


Before QUINN and REAVIS and CAMPBELL, JJ.

**OPINION**

Presenting a sole issue, Trinity Universal Insurance Company challenges the award of attorney's fees to Lilith Brainard, Sally Brainard Wicker, E. Swasey Brainard, II, Amy Brainard, Berklee Brainard Clements, Sena Brainard and the Estate of Edward H. Brainard, II, following a jury trial seeking recovery upon Trinity's underinsured motorist (UIM)

contract. By a sole cross issue, the Brainards contend the trial court erred in failing to award prejudgment interest on the $1,010,000 damages found by the jury as to the underinsured's conduct before offsetting prior settlements and PIP benefits. Because neither party presents any issues challenging the sufficiency of the evidence, we will review only such history necessary to address the two questions of law presented. Based upon the rationale expressed herein, we reverse and render in part and affirm in part.

Trinity issued an automobile liability policy to Brainard Cattle Company, E.S.F. Brainard, *et al.*, for a policy period commencing August 26, 1998 through August 26, 1999. Among other provisions, the policy included an uninsured/underinsured motorists (UIM) insurance endorsement. On July 1, 1999, Edward H. Brainard, II, an insured under the policy, sustained fatal injuries in a head on collision with a motorized work over rig owned and operated by an employee of Premier. After the Brainards commenced their wrongful death action on January 19, 2000, against Premier and its employee, they discovered that the limits of liability insurance for Premier did not exceed one million dollars. This information prompted the Brainards to make a written claim for UIM benefits. Trinity acknowledged receipt of the claim and requested supporting information.

By their third amended petition the Brainards joined Trinity and, in addition to claims under articles 21.21 and 21.55 of the Texas Insurance Code Annotated (Vernon Supp. & Pamph. Supp. 2004), claims for common law breach of duty of good faith/unfair settlement practices, and claims under the Deceptive Trade Practices-Consumer Protection Act, Tex.

2

Bus. & Com. Code Ann., §§ 17.41 - 17.885 (Vernon 2002 & Supp. 2004), (DTPA), the

Brainards alleged:

- Plaintiffs are covered parties under this policy and have performed all conditions precedent to receiving benefits under the policy; and

- Defendant Trinity is in breach of contract for failing to pay benefits. Its obligation to pay UIM benefits is not conditioned upon a judgment fixing such damages. The Defendant has an obligation to pay when its investigation reveals that there is no question as to liability and that damages exceed the policy limits of the responsible party. Defendant Trinity has information which makes it incumbent upon them to pay benefits, as there is no question of liability on the part of the other Defendants and that the damages far exceed the One Million dollars of insurance possessed by the other Defendants. This obligation became all the more apparent when the original Defendants delivered their policy limits on November 20, 2000.

The coverage provision of the UIM endorsement in the policy provides:

We will pay damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an Insured, or property damage caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us. If we and you do not agree as to whether or not a vehicle is actually uninsured, the burden of proof as to that issue shall be on us.

Without admitting liability, the insurance carrier for Premier paid its policy limits of

$1,000,000 to the Brainards in settlement and by order dated January 5, 2001, the trial

court dismissed with prejudice the claims against Premier and its employee, but did not

dismiss the claims against Trinity.

3

By order of June 11, 2001, among other things, the trial court denied Trinity's first motion for severance. However, on November 29, 2001, following our decision in In Re Trinity Universal Ins. Co., 64 S.W.3d 463 (Tex.App.--Amarillo 2001, orig. proceeding), the trial court granted Trinity's second motion for severance and/or plea in abatement in its entirety, effectively severing all extra-contractual claims, including Brainards' claims for breach of duty of good faith and fair dealing, violations of articles 21.21 and 21.55 of the Insurance Code and violations of the DTPA.

Following a four day jury trial, a wrongful death charge was submitted to the jury. By its verdict, the jury awarded the surviving wife of the deceased $500,000 and each of the five children $100,000 and the estate $10,000 for funeral expenses, making the total award for actual damages $1,010,000. Also, the jury awarded reasonable attorney's fees to the Brainards in the amount of $100,000. Following motions for new trial and other post-judgment motions by both parties and after allowing an offset of $1,005,000, the trial court signed its judgment that the Brainards recover from Trinity the sum of $5,000 in damages and $100,000 in attorney's fees, but denied their request for prejudgment interest.

Two questions of law are presented for our determination, to-wit: (1) whether in an action on the UIM policy, an award of attorney's fees is authorized under section 38.001 of the Texas Civil Practices and Remedies Code Annotated (Vernon 1997); and (2) whether the Brainards were entitled to an award of prejudgment interest on the $1,010,000 in

4

damages found by the jury as to the underinsured's conduct before offsetting prior settlements and PIP benefits.

**Attorney's Fees**

By its sole issue, Trinity contends the trial court erred in awarding the Brainards $100,000 in attorney's fees in conjunction with the prosecution of the UIM claim because there had been no determination of the operator's liability (and damages incurred by the Brainards) prior to the rendition of the judgment at issue.[1]  We agree.

The Supreme Court has consistently held that attorney's fees may not be awarded "unless permitted by statute or by contract between the parties," and the availability of attorney's fees under a statute is a question of law.  Holland v. Wal-Mart Stores, Inc., 1 S.W.3d 91, 94 (Tex. 1999).  In their prayer and without referencing any statutory authority or contractual provision as support or authority, the Brainards sought an award of attorney's fees.  However, from the remarks of the trial court during the charge conference upon Trinity's objection to the inclusion of the attorney's fees question and from the Brainards' contention on appeal, section 38.001(8) of the Civil Practice and Remedies Code was the basis of the attorney's fees based on a claim on an oral or written contract.  Although the

---

[1]At trial, Trinity objected to the admission of any evidence regarding attorney's fees. Also, at the charge conference, Trinity objected to "the charge on the grounds that attorney's fees is not a proper measure of damages in this type of case.  Therefore, question number 9 should not be submitted to the jury."  Trinity's objection was overruled and the question was submitted.

interpretation of insurance contracts is governed by the same rules as interpretation of other contracts, in addition to the written provisions of the contract, the Brainards alleged as their breach of contract claim that Trinity had "an obligation to pay when its investigation [revealed] that there [was] no question as to liability and that damages [exceeded] the policy limits of the responsible party." S*ee* Trinity Universal Ins. Co. v. Cowan, 945 S.W.2d 819, 823 (Tex. 1997).

Restated, Trinity agreed to pay damages that the Brainards "were legally entitled to recover from" Premier or its operator because of bodily injuries sustained by Edward Brainard. The phrase "legally entitled to recover" is not defined in the UIM provision, but it has been determined to mean that the Brainards "must be able to show fault on the part of the uninsured motorist and the extent of the resulting damages." *See* Franco v. Allstate Insurance Company, 505 S.W.2d 789, 792 (Tex. 1974). From the statement in their brief that the suit's "primary focus is to quantify damages which the Brainards could have recovered from Premier and its driver," the Brainards recognize that the "extent of the resulting damages" is controlling.[2] In this context, this provision is not a condition precedent relating to the formation of the contract as discussed in Dillon v. Lintz, 582 S.W.2d 394, 395 (Tex. 1979), but instead relates to the performance under the contract. Where, as here, a promise to pay is made subject to a condition precedent, no breach occurs until the condition occurs. *See id.*; *see also* Paris Milling Company v. Wooldridge,

---

[2]*See* brief for appellee/cross appellant on their direct appeal point at page 11.

473 S.W.2d 224, 227 (Tex.Civ.App.--Amarillo 1971, no writ); Insurance Corp. of America v. Webster, 906 S.W.2d 77, 81 (Tex.App.--Houston [1st Dist.] 1995, writ denied). By our prior opinion in *In Re Trinity*, 64 S.W.3d at 467, we held that the Brainards' claim for UIM benefits was contractual in nature and unlike personal injury protection coverage, the provisions of the UIM endorsement condition payment of benefits upon a determination of liability of the UIM motorist and damages.

The question of an award of attorney's fees in a UIM action has received mixed analysis by five other courts of appeals. In Sprague v. State Farm Mut. Auto. Ins. Co., 880 S.W.2d 415, 416-17 (Tex.App.--Houston [14th Dist.] 1993, writ denied), and Sikes v. Zuloaga, 830 S.W.2d 752, 754 (Tex.App.--Austin 1992, no writ), the courts held that attorney's fees were not recoverable before determination of the fault of the underinsured motorist and the amount of damages. However, in Allstate Ins. Co. v. Lincoln, 976 S.W.2d 873, 875-76 (Tex.App.--Waco 1998, no pet.), Whitehead v. State Farm Mut. Auto. Ins., 952 S.W.2d 79, 89 (Tex.App.--Texarkana 1997), *rev'd on other grounds*, 988 S.W.2d 744 (Tex. 1999), and Novosad v. Mid-Century Ins. Co., 881 S.W.2d 546, 552 (Tex.App.--San Antonio 1994, no writ), the courts took the contrary position and allowed attorney's fees. Based upon this record and the absence of a jury finding of breach of contract as alleged by the Brainards, we conclude the decisions in *Sprague* and *Sikes* present the proper disposition of the question of attorney's fees. Trinity's sole issue is sustained.

## Prejudgment Interest

By their cross-issue, the Brainards contend the trial court erred in failing to award prejudgment interest on the $1,010,000 damages[3] as to the underinsured's conduct before offsetting prior settlements and PIP benefits and entering judgment against Trinity. They contend:

> The real issue in this appeal is whether interest on the award against the underinsured, Premier, is recoverable from the UIM carrier when such damages are within the UIM policy limits. The Brainards contend that the Supreme Court's precedent and the Texas Statutes require such recovery.

We disagree. Throughout our analysis we must take into consideration the fact that the jury was instructed to find the actual damages without including interest.

Article 5.06-1 of the Insurance Code (Vernon Supp. 2004), entitled "Uninsured or Underinsured Motorist Coverage" applies to the Trinity UIM endorsement. Paragraph (5) provides:

> The underinsured motorist coverage shall provide for payment to the insured of all sums which he shall be legally entitled to recover *as damages* from owners or operators of underinsured motor vehicles because of *bodily injury or property damage* in an amount up to the limit specified in the policy, *reduced by the amount recovered or recoverable from the insurer of the* underinsured motor vehicle.

---

[3]The jury awarded Lilith Brainard $100,000 for pecuniary loss, $200,000 for loss of companionship and society and $200,000 for mental anguish and awarded each of the five children $50,000 for loss of companionship and society, and $50,000 for mental anguish.

(Emphasis added). In addition, provision D to the UIM endorsement entitled "Limit of Insurance" provides in part as follows:

> Subject to this maximum, our limit of liability will be the lesser of:
>
> 1. The difference between the amount of a covered insured's damages for bodily injury or property damage and the amount paid or payable to that covered insured for such damages, by or on behalf of persons or organizations who may be legally responsible; and
>
> 2. The applicable limit of liability for this coverage.

In Stracener v. United Serv. Auto. Ass'n, 777 S.W.2d 378 (Tex. 1989), expressly recognizing misinterpretation of the statute by some courts of appeals, as material here, the Court held:

> [w]e also hold that the set off provided for in an article 5.06-1(5) is to be subtracted from the amount of *actual damages* incurred as a result of the negligence of the underinsured motorist rather than from the limits specified in the underinsured motorist insurance policy.

(Emphasis added). *Id*. at 380. The action of the trial court in applying the credit of prior settlement and PIP payment to the amounts of actual damages found by the jury without awarding any interest was consistent with the construction of article 5.06-1(c) by the Court as well as the express limitation of Trinity's liability contained in the contract. Moreover, in clear and precise terms, Trinity agreed to pay damages because of "bodily injury or

property damage," but did not agree to pay interest on the damages or the amount of a judgment if obtained against the underinsured operator, less the offset.

As material to this appeal following the severance of the Brainards' claims based on violations of the DTPA and articles 21.21 and 21.55 of the Insurance Code, their action against Trinity was not an action for wrongful death or personal injury and property damage tort claim; rather, it constituted a claim for breach of contract. *See Franco*, 505 S.W.2d at 792-93 (holding that an action on a UIM contract is not a wrongful death action and is *ex contractu* rather than *ex delicto*). By prayer in their pre-severance pleading the Brainards sought prejudgment interest; however, they did not identify any statute or contractual provision supporting an award of prejudgment interest. Similar to Henson v. Southern Farm Bureau Cas. Ins., 17 S.W.3d 652, 653 (Tex. 2000), the relationship between the Brainards and Premier was that of injured party and tortfeasor, while the relationship between the Brainards and Trinity is that of contracting parties. Accordingly, section 304.102 of the Texas Finance Code, which authorizes prejudgment interest in wrongful death, personal injury, and property damage cases has no application as to Trinity. *See* Tex. Fin. Code Ann. § 304.101 (Vernon Supp. 2004); *see also* Johnson & Higgins of Tx. v. Kenneco Energy, 962 S.W.2d 507, 529-30 (Tex. 1998) (holding that section 304.101, formerly Tex. Rev. Civ. Stat. Ann. art. 5069-1.05, § 6(a), allowing statutory prejudgment interest applies only to wrongful death, personal injury, and property damage cases).

10

Moreover, as above noted, the claims against Trinity in the trial court were grounded in contract, not tort. Although the Brainards recognize that the real issue is the amount Trinity is obligated to pay under its contract, they suggest that statutes awarding interest in tort cases apply in this suit on contract. However, on appeal, parties are restricted to the theory on which the case was tried. *See* Davis v. Campbell, 572 S.W.2d 660, 662 (Tex. 1978); *see also* Dittoe v. Jones, 220 S.W.2d 315, 319 (Tex.Civ.App.–Fort Worth 1949, writ ref'd n.r.e.). Accordingly, we may not consider the Brainards' appellate theory regarding prejudgment interest based on interest applicable to tort claims per sections 304.101 and 304.102 of the Finance Code as grounds to reverse the judgment of the trial court.

We have not overlooked the Brainards' references to Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549 (Tex. 1985), Horizon/CMS Healthcare Corporation v. Auld, 34 S.W.3d 887 (Tex. 2000), and *Johnson & Higgins*, 962 S.W.2d at 507; however, we do not consider these cases controlling because they do not present questions involving a suit on contract for UIM coverage. Further, although Allstate Indem. Co. v. Collier, 983 S.W.2d 342 (Tex.App.--Waco 1998, pet. dism'd by agr.), references *Stracener*, 777 S.W.2d at 378, it does not address that portion of *Stracener* in which the court discusses subtraction of prior settlement from the amount of actual damages. Similarly, Menix v. Allstate Indem. Co., 83 S.W.3d 877 (Tex.App.--Eastland 2002, pet. denied), does not reference *Stracener* nor discuss a provision such as the one in Trinity's UIM endorsement entitled "Limit of Insurance." Brainards' cross-issue is overruled.

Accordingly, that portion of the trial court's judgment awarding the Brainards attorney's fees in the amount of $100,000 is reversed and judgment is hereby rendered that no attorney's fees are awarded; in all other respects the judgment is affirmed.


Don H. Reavis
Justice