NO. 07-04-0577-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

JANUARY 12, 2005

_____

In re WILLIAM CLIFTON McELHANEY,

Relator

_____

***Original Proceeding***

_____

Before QUINN, REAVIS and CAMPBELL, JJ.

Pending before the court is the petition for a writ of mandamus filed by William Clifton McElhaney. Through it, he requests that we order the judge of the 251st District Court to vacate his order denying McElhaney's motion to dismiss the petition in a suit affecting the parent-child relationship filed by the real parties-in-interest (Gloria Kay Rawls and Raymond Leigh Rawls, the maternal grandparents of the minor child) for lack of standing and to compel the trial court to enter an order dismissing the suit. For the reasons discussed below, we deny the petition.

A grandparent has standing to file an original suit requesting managing conservatorship of a minor child when "the order requested is necessary because the child's environment presents a serious question concerning the child's physical health or

welfare." TEX. FAM. CODE ANN. §102.004(a)(1) (Vernon 2002).[1]  Furthermore, abusive or violent conduct as well as drug-related criminal activity by a parent can support a conclusion that a child's physical or emotional well-being is being endangered. *In re D.C.,* 128 S.W.3d 707, 715-16 (Tex. App.–Fort Worth 2004, no pet.).

Here, evidence of record discloses that McElhaney's five-year-old child had lived with the child's paternal grandmother since he was about six months old.  When she died in January of 2004, the child went to live with McElhaney and McElhaney's sister for several weeks.  During that time, McElhaney allegedly assaulted his sister, who then called both the police and Child Protective Services.  Evidence indicated that he previously had assaulted his wife and had a "real bad temper."  After the assault upon McElhaney's sister, the child went to live with the Rawls.  The parties eventually agreed that McElhaney could regain custody of the youth if, among other things, he underwent periodic drug testing (*i.e.* hair follicle testing and urinalysis) and the results of those tests were negative.  The agreement later was memorialized in a temporary court order.

Though McElhaney alleged that he ceased using methamphetamine on January 1, 2004, he nevertheless failed his first hair follicle test.  Furthermore, when asked to undergo a urinalysis per the temporary order and on 24 hours notice, it took five days for him to appear and comply.  He did pass that test, however.

---

[1] Relator interjects the element of immediacy into the test by suggesting that there must be an immediate concern for the child's safety or welfare.  Though that indicia originally appeared in §11.03(b)(1) of the Texas Family Code, the word was removed when the statute was recodified into §102.004(a)(1) of the same code. Given that the legislature excluded the term from the recodification, we must hold that it intended to excise the need for immediacy from the equation. *See Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981) (stating that "we believe every word excluded from a statute must . . . be presumed to have been excluded for a purpose").  So, because *Von Behren v. Von Behren*, 800 S.W.2d 919 (Tex. App.–San Antonio 1990, writ denied), a case cited by the Relator for the proposition that there must also be an immediate concern for the child's welfare, involved §11.03(b)(1) as opposed to §102.004(a)(1), it is not controlling.

That he failed the hair follicle test and delayed the urinalysis for five days is some evidence from which the trial court could reasonably question whether McElhaney had stopped taking drugs. This, coupled with the evidence of relator's temper and assaults upon his wife and sister, provided basis for the trial court to conclude that serious questions regarding the child's physical health or welfare existed if McElhaney was allowed to regain custody of the child. At the very least, questions of fact existed concerning the child's safety and welfare, and because they did, we cannot grant mandamus. *See In re Trinity Universal Ins. Co.,* 64 S.W.3d 463, 466 (Tex. App.–Amarillo 2001, orig. proceeding) (holding that an appellate court cannot resolve questions of fact in an original mandamus proceeding).

Accordingly, the petition for a writ of mandamus is denied.


Brian Quinn
Justice

3