IN THE SUPREME COURT OF TEXAS






IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0537
════════════
 
Lilith Brainard, et al., 
Petitioners,
 
v.
 
Trinity Universal Insurance 
Company, Respondent
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Seventh District of 
Texas
════════════════════════════════════════════════════
 
 
Argued April 14, 
2005
 
 
 
Chief Justice Jefferson delivered the 
opinion of the Court.
Justice O’Neill and Justice Johnson did not participate in 
the decision.
This case 
presents the following issues: (1) whether uninsured/underinsured motorist (UIM) 
insurance covers prejudgment interest that the underinsured motorist would owe 
the insured in tort liability; (2) if so, how to apply settlement and personal 
injury protection (PIP) credits to the interest calculation; and (3) the 
circumstances under which an insured may recover attorney’s fees from the UIM 
insurer under Chapter 38 of the Civil Practice and Remedies Code. We hold that: 
(1) UIM insurance covers this prejudgment interest; (2) under the “declining 
principal” formula, each credit is applied according to the date on which it was 
received; and (3) the insured may recover attorney’s fees under Chapter 38 only 
if the insurer does not tender UIM benefits within thirty days after the trial 
court signs a judgment establishing the liability and underinsured status of the 
other motorist. We reverse the court of appeals’ judgment in part, affirm in 
part, and remand this case to the trial court to calculate prejudgment interest 
consistent with this opinion.
I
Background
 
On July 1, 
1999, Edward H. Brainard II was killed when his vehicle was involved in a 
head-on collision with a rig owned by Premier Well Service, Inc. His widow, 
Lilith Brainard, and their five children (collectively, Brainard) brought a 
wrongful death action against Premier and sought UIM benefits from Trinity 
Universal Insurance Company under a policy issued to the family business, 
Brainard Cattle Company. Trinity paid Brainard $5,000 under the policy’s PIP 
provision but requested further information supporting the UIM claim. Brainard 
alleges she submitted the information and performed all conditions precedent to 
receiving the benefits, but Trinity never paid. Eventually, Brainard joined 
Trinity as a defendant, alleging breach of contract, breach of the common law 
duty of good faith, violations of the Deceptive Trade Practices-Consumer 
Protection Act, and violations of Insurance Code articles 21.21 and 21.55.
On December 
7, 2000, Brainard and Premier settled Brainard’s claims for $1,000,000, 
Premier’s policy limit, and Premier was subsequently dismissed from the suit. 
When Brainard demanded that Trinity also tender the $1,000,000 UIM policy limit, 
Trinity countered with an offer of $50,000. The trial court severed Brainard’s 
extra-contractual claims, which remain pending, and the parties proceeded to 
trial on the UIM contract. A jury found that Premier’s negligence caused the 
accident and awarded Brainard $1,010,000 for pecuniary loss, funeral expenses, 
loss of companionship and society, and mental anguish. The jury also awarded 
$100,000 for attorney’s fees.
The trial 
court applied a $1,005,000 credit for Brainard’s settlement and PIP benefits, 
and signed a judgment against Trinity for the remaining $5,000 in damages plus 
$100,000 in attorney’s fees. On appeal, Trinity challenged the attorney’s fees 
award, and Brainard, by cross appeal, alleged the trial court erred in refusing 
to award prejudgment interest on the $1,010,000 in actual damages. The court of 
appeals reversed that portion of the trial court’s judgment awarding attorney’s 
fees and affirmed the denial of prejudgment interest. 153 S.W.3d 508, 513. 
Because both points have engendered disagreement among the courts of appeals, we 
granted Brainard’s petition for review. 48 Tex. Sup. Ct. J. 439 (Mar. 11, 
2005).
II
Recovery of 
Prejudgment Interest
 
The Insurance 
Code requires insurers to offer Texas motorists UIM coverage and mandates that 
such coverage:
provide 
for payment to the insured of all sums which he shall be legally entitled to 
recover as damages from owners or operators of underinsured motor vehicles 
because of bodily injury or property damage in an amount up to the limit 
specified in the policy, reduced by the amount recovered or recoverable from the 
insurer of the underinsured motor vehicle.
 
Tex. Ins. Code art. 5.06-1(5). A 
motorist is underinsured if his or her liability insurance is insufficient to 
pay for the injured party’s actual damages. Stracener v. United Servs. Auto. 
Ass’n, 777 S.W.2d 378, 380 (Tex. 1989). Because the jury valued Brainard’s 
damages at $1,010,000, and Premier’s liability policy limit was $1,000,000, 
Premier was underinsured. The trial court correctly applied the sum of Premier’s 
$1,000,000 liability limit and Brainard’s $5,000 PIP recovery as an offset to 
actual damages. Mid-Century Ins. Co. of Tex. v. Kidd, 997 S.W.2d 265, 271 
(Tex. 1999); Stracener, 777 S.W.2d at 380. Thus, Trinity does not dispute 
that the $5,000 difference is covered under Brainard’s UIM policy. The issue is 
whether, in addition to this amount, UIM insurance covers prejudgment interest 
that Premier would owe on the $1,010,000 in actual damages. We conclude that it 
does.
Prejudgment 
interest is awarded to fully compensate the injured party, not to punish the 
defendant. Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 552 
(Tex. 1985), superseded in part by statute, Act of June 3, 1987, 70th 
Leg., 1st C.S., ch. 3, _ 1, 1987 
Tex. Gen. Laws 51, 51-52, as recognized in Johnson & Higgins of Tex., 
Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507 (Tex. 1998) and C 
& H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 327 (Tex. 1994). It is 
“‘compensation allowed by law as additional damages for lost use of the money 
due as damages during the lapse of time between the accrual of the claim and the 
date of judgment.’” Johnson & Higgins, 962 S.W.2d at 528 (quoting 
Cavnar, 696 S.W.2d at 552). By statute, “[a] judgment in a wrongful 
death, personal injury, or property damage case earns prejudgment interest.” 
Tex. Fin. Code § 304.102. Thus, 
if Brainard obtained a judgment against Premier for past damages resulting from 
the collision, Premier would be liable for prejudgment interest. Whether 
Brainard may recover this interest from Trinity is governed by their UIM 
insurance contract.
In language 
closely tracking article 5.06-1(5), Brainard’s policy states that Trinity will 
pay “damages which [Brainard] is legally entitled to recover from” Premier. We 
have consistently viewed prejudgment interest as falling within the common law 
meaning of damages, and Trinity does not argue that the Legislature or the 
parties intended the term to convey a narrower meaning. Tex. Ins. Code art. 5.06-1(5); see, 
e.g., Horizon/CMS Healthcare Corp. v. Auld, 34 S.W.3d 887, 898 (Tex. 
2000) (citing Cavnar, 696 S.W.2d at 552-54). Two courts of appeals have 
held that prejudgment interest constitutes damages that the insured is “legally 
entitled to recover” from the underinsured motorist. Norris v. State Farm 
Mut. Auto. Ins. Co., __ S.W.3d __, __ (Tex. App.—Waco 2004, pet. granted); 
Menix v. Allstate Indem. Co., 83 S.W.3d 877, 880 (Tex. App.—Eastland 
2002, pet. denied); Allstate Indem. Co. v. Collier, 983 S.W.2d 342, 343 
(Tex. App.—Waco 1998, pet. dism’d by agr.).
Trinity’s 
primary argument to the contrary, upon which the court of appeals relied, 
emphasizes that the UIM policy, like article 5.06-1(5), requires Trinity to pay 
only those damages which the insured is legally entitled to recover “because of 
bodily injury or property damage.” 153 S.W.3d at 512; see also Tex. Ins. Code art. 5.06-1(5). Trinity 
contends that this qualification negates coverage for prejudgment interest 
because the essence of prejudgment interest is compensation for lost use of 
money, not damages from bodily injury. Further, Trinity suggests that Brainard’s 
interpretation of the UIM endorsement would require the insurer to cover all 
damages assessed against the underinsured motorist, yet the courts of appeals 
have held that UIM insurance does not cover punitive damages. See, e.g., 
Milligan v. State Farm Mut. Auto. Ins. Co., 940 S.W.2d 228, 232 (Tex. 
App.—Houston [14th Dist.] 1997, writ denied); State Farm Mut. Auto. Ins. Co. 
v. Shaffer, 888 S.W.2d 146, 148 (Tex. App.—Houston [1st Dist.] 1994, writ 
denied); Vanderlinden v. United Servs. Auto. Ass’n Prop. & Cas. 
Ins. Co., 885 S.W.2d 239, 242 (Tex. App.—Texarkana 1994, writ denied).
Trinity’s 
argument fails for several reasons. First, although several courts of appeals 
have held that UIM insurance does not cover punitive damages assessed against 
the underinsured motorist, none reached this result by adopting Trinity’s narrow 
interpretation of damages “because of bodily injury.” In fact, their reasoning 
effectively supports UIM coverage for prejudgment interest. In Shaffer, 
the court concluded that the phrase “because of bodily injury” was ambiguous 
because it could mean that the damages must (a) literally derive from a bodily 
injury or (b) arise as a result of bodily injury. Shaffer, 888 S.W.2d at 
148-49. If this language were ambiguous and had been drafted by the insurance 
company, precedent would require that it be interpreted to favor the insured. 
Nat’l Union Fire Ins. Co. v. Hudson Energy Co., 811 S.W.2d 552, 555 (Tex. 
1991). Most UIM provisions, however, recite nearly the exact text of article 
5.06-1(5). For that reason, the Shaffer court inquired into the statute’s 
legislative intent, which it found addressed in one of this Court’s opinions. In 
Stracener, we concluded that the Legislature sought to protect 
“conscientious motorists from ‘financial loss caused by negligent financially 
irresponsible motorists.’“ Stracener, 777 S.W.2d at 382 (quoting Act of 
Oct. 1, 1967, 60th Leg., R.S., ch. 202, § 3, 1967 Tex. Gen. Laws 448, 449). 
Accordingly, the court of appeals observed that a primary purpose of UIM 
insurance is compensatory; it protects against financial loss. Shaffer, 
888 S.W.2d at 149. Other courts of appeals have added that neither deterring 
wrongful conduct nor punishing the defendant is accomplished when the UIM 
insurer pays punitive damages assessed against the underinsured motorist. 
Milligan, 940 S.W.2d at 231; Vanderlinden, 885 S.W.2d at 240-42. 
Thus, they have held that neither the language of article 5.06-1(5) nor public 
policy supports coverage of punitive damages.
We have 
already noted that prejudgment interest serves to compensate the injured party, 
not to punish the defendant. Johnson & Higgins, 962 S.W.2d at 528; 
Cavnar, 696 S.W.2d at 552. This distinction is apparent in the rule that 
“[p]rejudgment interest may not be assessed or recovered on an award of 
exemplary damages.” Tex. Civ. Prac. 
& Rem. Code § 41.007. Article 5.06-1(5)’s compensatory purpose is 
well served when the insured obtains, in addition to actual damages, any 
prejudgment interest that the underinsured motorist would owe the insured. 
Trinity’s attempt to give the phrase “because of bodily injury” an artificially 
literal meaning—so as to establish a nexus requirement that eliminates coverage 
for prejudgment interest—has no basis in the statute’s history or our precedent, 
under which article 5.06-1 is liberally construed to protect persons who are 
legally entitled to recover damages from underinsured motorists. 
Stracener, 777 S.W.2d at 382. 
Moreover, 
Trinity’s rigid reading proves too much, for it would entail splitting hairs 
even among purely compensatory damages, such as those for mental anguish and 
loss of society. Article 5.06-1(5) states that the insurer will pay the insured 
“all sums which he shall be legally entitled to recover as damages from owners 
or operators of underinsured motor vehicles because of bodily injury or property 
damage.” Tex. Ins. Code. art. 
5.06-1(5). The qualification “because of bodily injury or property damage” 
merely underscores that UIM insurance is compensatory. In addition, it clarifies 
what should be obvious—that only injuries and damages caused by the motor 
vehicle accident are covered—because if the qualification is omitted, the policy 
would not exclude damages arising from unrelated incidents and transactions 
between the parties. In sum, while it is true that prejudgment interest accrues 
over time because of lost use of money, it is equally accurate to say that it 
constitutes additional compensatory damages for the insured’s bodily injury and 
property damage.
Trinity’s 
alternative argument against coverage for prejudgment interest is based on the 
contractual aspect of a UIM claim. Franco v. Allstate Ins. Co., 505 
S.W.2d 789, 791-92 (Tex. 1974) (noting that, “although ultimate recovery in this 
type of action depends upon proof of damages due to the tort of an uninsured 
third party, the cause of action against the insurer arises by reason of the 
written contract”). If the claim is purely contractual, as Trinity contends, 
then Finance Code section 304.102, which authorizes prejudgment interest in 
wrongful death, personal injury, and property damage cases, would have no 
application in this case. Tex. Fin. Code 
§ 304.102. The court of appeals adopted this approach, citing our 
decision in Henson v. Southern Farm Bureau Casualty Insurance Company, 17 
S.W.3d 652, 653 (Tex. 2000), as additional support for the view that “the 
relationship between the Brainards and Trinity is that of contracting parties.” 
153 S.W.3d at 513.
The reference 
to Henson deserves further discussion because our reasoning in that case 
clarifies the issues presented here. Henson was a passenger in a truck driven by 
Millican, which collided with a vehicle driven by Contreras. Henson, 17 
S.W.3d at 652. Henson sued Millican and Contreras for negligence and, before 
establishing liability, settled with Contreras for $20,000—her liability 
insurance limit. Id. at 652-53. A jury attributed one hundred percent of 
the negligence to Contreras and assessed Henson’s damages at $133,842. 
Id. at 653. Within thirty days of the judgment, Henson and Millican’s UIM 
insurers tendered $45,000—their combined UIM policy limits. Id. Henson, 
however, refused the payment and demanded prejudgment interest on top of the 
policy limits, alleging the interest began to accrue against the insurers from 
the earlier of 180 days after he gave notice of his claim or the day he filed 
suit against them. Id. at 653-54.
The issue in 
Henson was whether prejudgment interest accrued on the insured’s 
contractual claim for UIM benefits. The prejudgment interest which Henson could 
recover from Contreras in tort liability was not at issue, as the damages 
assessed by the jury already exceeded the UIM policy limit. We examined the 
insurer’s obligation to pay damages which the insured is “legally entitled to 
recover” from the underinsured motorist and concluded that there is no 
contractual duty to pay benefits until the liability of the other motorist and 
the amount of damages suffered by the insured are determined. Id. at 
653-64. Thus, we held that a UIM claim does not earn prejudgment interest until 
the insurer breaches the contract by withholding benefits after the insured has 
obtained a judgment establishing the liability and underinsured status of the 
other motorist. Id. at 654. The jury could have found that Contreras was 
not negligent or that Henson’s damages did not exceed Contreras’s liability 
insurance limit, precluding any recovery of UIM benefits. Id. Because the 
insurers tendered the benefits promptly after the jury made its findings, no 
contractual duty was breached, and Henson was not entitled to receive the 
benefits earlier than he did. Id. The question we answer today—whether 
UIM insurance covers the prejudgment interest an underinsured motorist would owe 
the insured—was not before us in Henson.
Under section 
304.102, Premier would be liable for prejudgment interest on $1,010,000. Tex. Fin. Code § 304.102. The fact that 
Brainard’s suit against Trinity is based on contract in no way renders the 
statute inapplicable. On the contrary, the UIM policy effectively incorporates 
the statute by requiring Trinity to pay damages which Brainard is “legally 
entitled to recover” from Premier. Section 304.102, like the law of negligence, 
is necessary to determine the liability of the underinsured motorist. The UIM 
policy, however, controls Trinity’s obligations. Because Brainard obtained a 
judgment establishing the negligence and underinsured status of Premier, the 
contract requires Trinity to pay benefits. Henson, 17 S.W.3d at 654.
Accordingly, 
we hold that UIM insurance covers prejudgment interest that the underinsured 
motorist would owe the insured. The court of appeals erred in affirming the 
trial court’s judgment denying Brainard this recovery.
III
Calculation of Prejudgment Interest
The parties 
do not challenge the calculation of actual damages; they agree that the trial 
court properly deducted Brainard’s $1,000,000 settlement and $5,000 PIP recovery 
from the jury’s $1,010,000 verdict, resulting in Trinity’s liability for $5,000. 
Mid-Century Ins. Co., 997 S.W.2d at 271; Stracener, 777 S.W.2d at 
380. Instead, the issue concerns how to apply these credits when calculating 
prejudgment interest. Based on the jury’s verdict, Premier would have been 
liable for $1,010,000 in actual damages, plus prejudgment interest on this 
amount. Having concluded that UIM insurance covers this interest, we turn now to 
its calculation.
Brainard’s 
suit against Premier was for wrongful death. In a wrongful death case, 
prejudgment interest accrues beginning on the 180th day after the defendant 
receives written notice of the claim or the day suit is filed, whichever occurs 
first, and ending on the day preceding the date judgment is rendered. Tex. Fin. Code § 304.104. In this case, 
the prejudgment interest period commenced on January 19, 2000, when Brainard 
filed suit against Premier. Because the trial court signed its judgment on 
January 15, 2003, the period ended on January 14. Id. Prejudgment 
interest is computed as simple interest with a rate equal to the postjudgment 
interest rate applicable at the time judgment is rendered. Id. §§ 
304.103, 304.104. The trial court’s judgment set the rate at ten percent.
Brainard 
contends that prejudgment interest is calculated on the entire $1,010,000 before 
applying credits. Accordingly, she seeks $263,430 in prejudgment interest—ten 
percent interest on $1,010,000 from January 19, 2000, until August 29, 2002, the 
date the parties moved to enter judgment.[1] In Brainard’s view, the interest is 
added to the jury’s verdict before deducting settlement and PIP credits, so that 
the credits do not affect the prejudgment interest calculation. Trinity objects, 
arguing that Brainard should not continue to earn interest on $1,010,000 in 
damages despite having already received $1,005,000 in compensation. We 
agree.
We recently 
touched on this issue in Battaglia v. Alexander, 177 S.W.3d 893, 908-09 
(Tex. 2005), in which we held that the trial court erred in calculating 
prejudgment interest on total damages before deducting payments that the 
plaintiff received from settling defendants. Although Battaglia involved 
health care liability claims subject to section 16.02 of former Revised Civil 
Statutes article 4590i, we established a framework that resolves the issue 
presented here. We reiterated that prejudgment interest is compensation “‘for 
lost use of the money due as damages during the lapse of time between the 
accrual of the claim and the date of judgment.’” Id. at 907 (quoting 
Cavnar, 696 S.W.2d at 552). Therefore, compensation other than for lost 
use of money is not interest but a windfall for the claimant and a penalty to 
the defendant. Id. We concluded that, to satisfy the purpose of 
prejudgment interest, settlements must be credited periodically, according to 
the date they are received. Id. at 907-08. This approach, known as the 
“declining principal” formula, is the proper way to apply credits in the 
calculation of prejudgment interest. Id. at 909 (overruling in part C 
& H Nationwide, Inc. v. Thompson, 903 S.W.2d 315, 327 (Tex. 1994)).
In 
Battaglia, we concluded that “[a] settlement payment should be credited 
first to accrued prejudgment interest as of the date the settlement payment was 
made, then to ‘principal,’ thereby reducing or perhaps eliminating prejudgment 
interest from that point in time forward.” Id. at 908. Thus, as we 
explain below, each credit applies first to the accrued interest and then to the 
principal, with each credit establishing a new interval. At each new interval, 
interest continues to accrue only on the remaining principal because under the 
general prejudgment interest provisions, “interest is computed as simple 
interest and does not compound.” Tex. 
Fin. Code § 304.104. 
Under the 
“declining principal” formula, the trial court is to consider the date on which 
the insured received each payment. Trinity paid Brainard $5,000 in PIP benefits 
shortly after the July 1, 1999 collision. Because there is no dispute that this 
payment was made sometime in July, well before the prejudgment interest period 
commenced, we may assume it was July 31. Brainard settled with Premier for 
$1,000,000—its liability insurance limit—on December 7, 2000. On March 9, 2001, 
Trinity offered to settle with Brainard for $50,000. See Tex. Fin. Code § 304.106. Two weeks 
later, in a letter to Brainard’s counsel, Trinity confirmed that the offer would 
remain open. Because Brainard’s $5,000 recovery did not exceed Trinity’s 
settlement offer, prejudgment interest did not accrue on the judgment after 
March 9, 2001. Id. § 304.105(a) (“If judgment for a claimant is equal to 
or less than the amount of a settlement offer of the defendant, prejudgment 
interest does not accrue on the amount of the judgment during the period that 
the offer may be accepted.”). Following are the relevant dates:
 
A.        
07/31/1999      Brainard receives $5,000 PIP 
payment
B.         
01/19/2000      Prejudgment interest period begins when 
Brainard files suit
C.        
12/07/2000      Brainard receives $1,000,000 
settlement
D.        
03/09/2001      Trinity offers Brainard $50,000
 
Brainard is 
entitled to recover prejudgment interest on the damages caused by Premier’s 
negligence. The beginning principal is $1,010,000—the amount of damages 
determined by the jury. The $5,000 PIP credit reduced the principal before 
prejudgment interest began to accrue. Thus, during the period from B to C, 
interest accrued on $1,005,000. At point C, the $1,000,000 credit is applied 
first to accrued prejudgment interest and then to principal. During the period 
from C to D, interest accrued on the principal remaining after application of 
the $1,000,000 credit. At point D, Brainard could have accepted Trinity’s 
settlement offer, and interest ceased to accrue on that date. Trinity is liable 
for the remaining sum, up to Brainard’s UIM policy limit, of the uncredited 
principal plus the uncredited interest that accrued from point C to point D. 
Tex. Ins. Code art. 5.06-1(5).
We remand 
this case to the trial court to modify the judgment in accordance with this 
opinion.
IV
Attorney’s 
Fees
 
The final 
issue is whether Brainard may recover attorney’s fees on her contract claim. The 
court of appeals reversed that portion of the trial court’s judgment awarding 
Brainard $100,000 in attorney’s fees. 153 S.W.3d at 510-11.
Attorney’s 
fees are recoverable from an opposing party only as authorized by statute or by 
contract between the parties. Travelers Indem. Co. v. Mayfield, 923 
S.W.2d 590, 593 (Tex. 1996). Chapter 38 of the Civil Practice & Remedies 
Code permits an insured to recover attorney’s fees incurred in a successful 
breach of contract suit against the insurer unless the insurer is liable for the 
fees under a different statutory scheme. Tex. Civ. Prac. & Rem. Code §§ 
38.001(8), 38.006; Grapevine Excavation, Inc. v. Maryland Lloyds, 35 
S.W.3d 1, 5 (Tex. 2000). Because no other statutory scheme applies, Brainard 
seeks to recover the fees under Chapter 38.
Under section 
38.002, Brainard must show that: (1) she was represented by counsel; (2) she 
presented the claim to Trinity; and (3) Trinity failed to pay the just amount 
owed within thirty days of presentment. Tex. Civ. Prac. & Rem. Code § 
38.002. Brainard contends that her suit is like any other breach of contract 
suit, and therefore, presentment occurred on February 15, 2000, the day she made 
a claim for UIM benefits. Three courts of appeals support her position. 
See Norris v. State Farm, __ S.W.3d at __; State Farm Mut. 
Auto. Ins. Co. v. Nickerson, 130 S.W.3d 487, 490 (Tex. App.—Texarkana 2004, 
pet. granted); Allstate Ins. Co. v. Lincoln, 976 S.W.2d 873, 876 (Tex. 
App.—Waco 1998, no pet.); Whitehead v. State Farm Mut. Auto. Ins. Co., 
952 S.W.2d 79, 88-89 (Tex. App.—Texarkana 1997), rev’d on other grounds, 
988 S.W.2d 744 (Tex. 1998); Novosad v. Mid-Century Ins. Co., 881 S.W.2d 
546, 552 (Tex. App.—San Antonio 1994, no writ). Trinity, on the other hand, 
argues that a UIM policy is different because the insurer’s duty to pay does not 
arise until the underinsured motorist’s liability, and the insured’s damages, 
are legally determined. Five courts of appeals, including the court of appeals 
in this case, agree. See De La Garza v. State Farm Mut. Auto. Ins. 
Co., 175 S.W.3d 29, 34 (Tex. App.—Dallas 2005, pet. denied); Menix v. 
Allstate Indem. Co., 83 S.W.3d 877, 882 (Tex. App.—Eastland 2002, pet. 
denied); Sprague v. State Farm Mut. Auto. Ins. Co., 880 S.W.2d 415, 416 
(Tex. App.—Houston [14th Dist.] 1993, writ denied); Sikes v. Zuloaga, 830 
S.W.2d 752, 753 (Tex. App.—Austin 1992, no writ).
This issue 
turns on the language in Chapter 38 requiring that “payment for the just amount 
owed must not have been tendered before the expiration of the 30th day after the 
claim is presented.” Tex. Civ. Prac. 
& Rem. Code § 38.002(3). The purpose of presentment is to allow the 
opposing party a reasonable opportunity to pay a claim without incurring an 
obligation for attorney’s fees. Jones v. Kelley, 614 S.W.2d 95, 100 (Tex. 
1981). Thus, an essential element to recovery of attorney’s fees under Chapter 
38 in a suit based on contract is “the existence of a duty or obligation which 
the opposing party has failed to meet.” Ellis v. Waldrop, 656 S.W.2d 902, 
905 (Tex. 1983). The UIM insurer is obligated to pay damages which the insured 
is “legally entitled to recover” from the underinsured motorist. Tex. Ins. Code art. 5.06-1(5). As 
discussed above, we have determined that this language means the UIM insurer is 
under no contractual duty to pay benefits until the insured obtains a judgment 
establishing the liability and underinsured status of the other motorist. 
Henson, 17 S.W.3d at 653-54. Neither requesting UIM benefits nor filing 
suit against the insurer triggers a contractual duty to pay. Id. Where 
there is no contractual duty to pay, there is no just amount owed. Thus, under 
Chapter 38, a claim for UIM benefits is not presented until the trial court 
signs a judgment establishing the negligence and underinsured status of the 
other motorist.
Of course, 
the insured is not required to obtain a judgment against the tortfeasor. 
State Farm Mut. Auto. Ins. Co. v. Matlock, 462 S.W.2d 277, 278 (Tex. 
1970). The insured may settle with the tortfeasor, as Brainard did in this case, 
and then litigate UIM coverage with the insurer. But neither a settlement nor an 
admission of liability from the tortfeasor establishes UIM coverage, because a 
jury could find that the other motorist was not at fault or award damages that 
do not exceed the tortfeasor’s liability insurance. See Henson, 17 S.W.3d 
at 654. Brainard’s contention that a UIM policy is to be treated like other 
contracts, for which damages are liquidated in a judicial proceeding and 
attorney’s fees incurred are recoverable, misinterprets the nature of UIM 
insurance. The UIM contract is unique because, according to its terms, benefits 
are conditioned upon the insured’s legal entitlement to receive damages from a 
third party. Unlike many first-party insurance contracts, in which the policy 
alone dictates coverage, UIM insurance utilizes tort law to determine coverage. 
Consequently, the insurer’s contractual obligation to pay benefits does not 
arise until liability and damages are determined. Id.
Because the 
contract did not require Trinity to pay UIM benefits before Premier’s negligence 
and underinsured status were determined, Brainard did not present a contract 
claim before the trial court rendered its judgment, and the court of appeals 
correctly concluded that Brainard is not entitled to recover attorney’s fees 
under Chapter 38.
V
Conclusion
 
We reverse 
the portion of the court of appeals’ judgment that denied Brainard prejudgment 
interest, affirm the portion that denied attorney’s fees, and remand this case 
to the trial court to calculate prejudgment interest consistent with this 
opinion. Tex. R. App. P. 60.2(a), 
(d).
 
_______________________
Wallace B. 
Jefferson
Chief Justice 

 
 
OPINION 
DELIVERED:     December 22, 
2006                                                     

 






[1] As explained above, however, the relevant date is that 
of the trial court’s judgment, rather than when the parties moved for entry of 
judgment.